Manuel SOLDEVILA,
Plaintiff-Appellee,

v.

SECRETARY OF AGRICULTURE OF
the UNITED STATES of America,
etc., Defendants-Appellants.

No. 74–1347.

United States Court of Appeals,
First Circuit.

Submitted Feb. 12, 1975.

Decided March 13, 1975.

Carla A. Hills, Asst. Atty. Gen., New York City, Julio Morales Sanchez, U. S. Atty., San Juan, P. R., William Kanter and Robert S. Greenspan, Attys., Dept. of Justice, Civ. Div., App. Section, Washington, D. C., on brief for defendants-appellants.

Blas C. Herrero, Jr., Jose M. Herrero, Herrero & Herrero, Hato Rey, P. R., and John L. A. De Passalacqua, Hato Rey, P. R., for plaintiff-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

In 1972, the appellee was appointed State Director of the Farmers Home Administration for Puerto Rico and the Virgin Islands, an agency of the United States Department of Agriculture. It is conceded that in the same year the appellee made available to his subordinates, federal employees, banquet tickets, to be sold at fifty dollars each, the proceeds to be donated to the campaign of Mr. Justo Mendez, a member of the New Progressive Party who was subsequently elected to the Senate of Puerto Rico.

On the basis of the sale of tickets, the Department of Agriculture, in a letter dated October 15, 1973, charged appellee with violation of 5 U.S.C. § 7324(a)(2),[1] a provision of the Hatch Act, and indicated that appellee would either be discharged or other appropriate action would be taken in "not less than 30 days". Upon receipt of this letter, the appellee went to the Civil Service Commission and, although this was not the next appropriate step in his administrative appeal, asked for an advisory ruling of the applicability of the Hatch Act to Puerto Rican Parties not affiliated with National Parties in light of 5 U.S.C. § 7326(1).[2] The appellee also responded to the Department of Agriculture by letter dated November 9, 1973, denying that his participation in the Mendez campaign violated 5 U.S.C. § 7324(a)(2) and

---

1. 5 U.S.C. § 7324(a)(2) provides: "An employee in an Executive agency or an individual employed by the government of the District of Columbia may not . . . (2) take an active part in political management or in political campaigns."

2. 5 U.S.C. § 7326(1) provides: "Section 7324(a)(2) of this title does not prohibit political activity in connection with—(1) an election and the preceding campaign if none of the candidates is to be nominated or elected at that election as representing a party any of whose candidates for presidential elector received votes in the last preceding election at which presidential electors were selected."

informing it that if the charges were not dropped he requested a hearing at the Department of Agriculture's convenience. The appellee was not discharged nor was further action taken by the Department of Agriculture until the following year.

On April 1, 1974, the Civil Service Commission ruled that the New Progressive Party was not within the definition of "partisan political party" contained in the Hatch Act. The specific provision of that Act that was in the question, 5 U.S.C. § 7324(a)(2), was indicated in the Civil Service Commission letter. Independently, the Director of Personnel for the Department of Agriculture wrote appellee:

> "On October 15, 1973, I wrote you proposing to take action to effect your discharge from employment or to take other appropriate action based on a charge of taking an active part in a political campaign in violation of Section 7324(a)(2) of Title 5, United States Code. The proposal, which was issued under Part 733, Title 5, Code of Federal Regulations, is herewith cancelled."

However, on the same date, by different letter, the same official also wrote that on the basis of the facts out of which the first charge arose the Department proposed appellee's removal, after a 30 day required notice period, for violation of 5 U.S.C. § 7323.[3]

The appellee responded by letter on April 23, charging a violation of his civil rights; pointing out the recent Civil Service Commission ruling on the non-applicability of the Hatch Act to his case; stating that the political contributions were in no way coerced by him, that the other charges were frivolous; and, finally, requesting dismissal of charges.

On May 20, appellee was notified that on the basis of the charges of April 1 he would be removed as of June 7, 1974. He was also informed of his right to appeal the decision to the Civil Service Commission. A phone call to the Commission revealed that no appeal was available until after discharge. Appellee, unwilling to suffer discharge prior to hearing, filed this action on June 6, one day before his scheduled removal. He sought and was granted a temporary order restraining the Department from dismissing him. The district court then granted a preliminary injunction from which the Secretary appeals.

■ The suit was brought against the Secretary of Agriculture in his official capacity and against the Personnel Director of the Department, both officially and personally, and sought not only injunctive relief against discharge but damages for violations of civil rights purportedly under 42 U.S.C. § 1983. In an effort to get to the root of this case we note at the outset what the government fails to point out in its brief on appeal and failed to note in its presentation to the district court: no action under § 1983 lies against *federal* officials acting pursuant to *federal* law; and the appellants were not alleged to have acted "under color of state law". *See* Lasher v. Shafer, 460 F.2d 343 (3d Cir. 1972); Savage v. United States, 450 F.2d 449 (8th Cir. 1971).

■ This case, with the civil rights claim removed, becomes a straightforward claim of wrongful discharge. The Supreme Court has recently ruled that

---

**3.** 5 U.S.C. § 7323 provides: "An employee in an Executive agency . . . may not request or receive from, or give to, an employee, . . . a thing of value for political purposes. An employee who violates this section shall be removed from the service."

Additional charges were made in the letter proposing removal. It was charged that appellee had a departmental secretary type minutes of the Parent Teachers Association meeting and used government paper and stencils therefor in violation of 7 C.F.R. 0.735–16(a) and used government employees to do personal errands in violation of 7 C.F.R. 0.735–16(a). These matters have been treated as secondary by both parties. A more serious charge was that appellee had requested a subordinate to obtain the party affiliation of all Farmers Home Administration employees. In light of our decision, we need not consider appellee's failure to exhaust administrative remedies with reference to these charges.

there is no constitutional right to hearing prior to suspension or discharge from government service even for a non-probationary employee. Arnette v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). The strong policy against enjoining incomplete agency actions, which is reinforced by the equity policy against enforcing personal service contracts and the disruptive effect of granting temporary relief in such cases, requires an extraordinarily strong showing of irreparable harm to warrant a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

The district court was in error in finding that the appellee made such a showing of extraordinary harm. The appellee testified that he and his family and particularly his daughter were psychologically troubled by the potential discharge. He also testified that he would have to resign from an elective post as member of the Board of Directors of the Caribe Federal Credit Union which requires that members be federal employees and that he would not be able to get other federal or state employment during his removal from office. To hold that this showing is sufficient is to contravene the Supreme Court's instructions that "insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however severely they may affect a particular individual." Sampson v. Murray, supra, at 92 n. 68, 94 S.Ct. at 953.

But the crucial error made by the district court lay in its holding inapplicable Sampson's anti-injunction teaching because of its view that the charge of April 1 was essentially identical to the previously alleged violation and that the Civil Service Commission's ruling on the inapplicability of the Hatch Act would control the decision on the second charge. The error was that 5 U.S.C. § 7323 is not a part of the Hatch Act,[4] and 5 U.S.C. § 7326(1) does not by its terms apply to it. While we do not pass on whether the same policy considerations may control, it clearly cannot be said that the Civil Service Commission is directly bound by its previous ruling, nor that the appellee had exhausted his administrative remedies when this suit was brought in the district court. The ruling in Sampson v. Murray, supra, is therefore controlling and district court action must await a final administrative decision. If appellee has not already filed his appeal from final administrative action he may do so within thirty days of the date of this opinion.

The judgment of the District Court is reversed.

---

4. 5 U.S.C. § 7323, Act of Aug. 15, 1876, ch. 287 § 6, 19 Stat. 169.

5 U.S.C. § 7324 is part of the Hatch Act, Act of Aug. 2, 1939, 53 Stat. 1148, as amended.