Eligio CASTRO and Rafael Diaz Diaz,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et al.,
Defendants, Appellees.

No. 84–1316.

United States Court of Appeals,
First Circuit.

Submitted Oct. 5, 1984.

Decided March 14, 1985.

Eligio Castro and Rafael Diaz Diaz, on brief, pro se.

Arthur L. Beamon, Asst. Gen. Counsel, Ingeborg G. Chaly, Washington, D.C., Daniel F. Lopez-Romo, U.S. Atty., and Osvaldo Carlo Linares, Asst. U.S. Atty., Hata Rey, P.R., on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and BREYER, Circuit Judges.

PER CURIAM.

This appeal involves one of several suits filed by one or both *pro se* appellants against the Federal Deposit Insurance Corporation (FDIC) after the FDIC did not renew appellants' temporary appointments with the FDIC.[1] In this case, appellants appeal an order dismissing with prejudice their complaint against the FDIC, and permanently enjoining them from filing additional pleadings in the instant case and from commencing future legal proceedings against the United States or the FDIC regarding the nonrenewal of their temporary appointments. Appellants additionally appeal the district court's assessment of costs against them.

We affirm the judgment of the district court.

*Background*

On August 28, 1978, appellant Eligio Castro became employed at the FDIC's San Juan, Puerto Rico, Liquidation Office. Castro's employment consisted of a series of successive, finite, temporary excepted appointments. His last appointment expired on November 10, 1982, and was not extended by the FDIC.

Appellant Rafael Diaz Diaz also held a series of successive, finite, temporary excepted appointments with the FDIC's San Juan Liquidation Office beginning on February 12, 1979. Diaz Diaz's employment with the FDIC ended when his last appointment expired on December 10, 1982.

Appellants subsequently filed a complaint and an amended complaint against the United States, the FDIC, and William Isaac, Chairman of the FDIC (appellees). Appellants' central claims were that the FDIC's refusal to renew appellants' appointments violated their federal statutory and constitutional rights. Appellants' requested relief included monetary relief and reinstatement in their former jobs.

Appellants also filed a motion for a preliminary injunction seeking, among other

1. These suits are summarized in *Castro v. United States,* 584 F.Supp. 252, 255–56, n. 1 (D.P.R. 1984).

things, reinstatement in their former jobs with the FDIC. Appellants subsequently filed a motion for a temporary restraining order. The district court denied both motions.

On January 23, 1984, appellees filed a motion to dismiss appellants' amended complaint, and to enjoin appellants from relitigating any matters set forth in their complaint in this case, or in any previous case, concerning the nonrenewal of their appointments with the FDIC. On April 6, 1984, the district court issued an opinion and order concluding that it lacked subject matter jurisdiction as to some of appellants' claims, and that the remaining claims failed to state a claim for which relief could be granted. The court found appellants' action to be frivolous and malicious, and it dismissed the action with prejudice. The court also permanently enjoined appellants "... from filing additional pleadings in this case and from relitigating, or attempting to relitigate, by commencing any lawsuit or other legal proceeding against the United States or the Federal Deposit Insurance Corporation with respect to the nonrenewal of their temporary appointments with the FDIC or to events arising out of matters set forth in this case or their prior litigation over that nonrenewal." *Castro v. United States*, 584 F.Supp. 252, 266 (D.P.R.1984). Finally, the court assessed costs against appellants pursuant to 28 U.S.C. § 1927. The court entered judgment dismissing appellants' action and awarding costs to appellees.

*Title VII Claims*

■ Appellants contend that the FDIC's failure to renew their appointments constitutes discrimination against them on the basis of national origin, contrary to section 717 of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Although appellants rely on Title VII, they also assert that it is unclear whether Title VII applies to federal excepted service employees. However, it has been held that Title VII's coverage of executive agency employees includes both competitive service employees and excepted service employees. *Kizas v. Webster*, 707 F.2d 524, 542, n. 95 (D.C.Cir.1983). Thus, appellants' status as former federal excepted service employees does not preclude them from invoking the provisions of Title VII.

Section 717(c) permits an aggrieved federal employee to file a civil action to review a claim of employment discrimination. However, the Supreme Court has held that this right is subject to certain preconditions. *Brown v. GSA*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Thus, before one alleging federal employment discrimination under Section 717 may file a civil action, he or she must first seek relief in the agency charged with discrimination. *Id.* Relevant Equal Employment Opportunity (EEO) regulations require a federal employee to contact an EEO counselor concerning his or her complaint, ordinarily within 30 days of the alleged violation. If the matter is not resolved, a complaint is formally filed with the agency. If the agency renders a decision adverse to the employee, he or she may appeal to the Equal Employment Opportunity Commission (EEOC) or, in certain situations, to the Merit Systems Protection Board (MSPB). Alternatively, he or she may initiate a civil action within 30 days of receipt of notice of the agency's decision. If the employee seeks review by the EEOC of the agency's decision, he or she then may file a civil action within 30 days of EEOC's final decision. In any event, the employee may file a court action if, after 180 days from the filing of the charge or appeal, the agency or the EEOC has not taken final action. *See* sec. 717(c).

■ The record in the instant case reveals that on October 14, 1982, the EEOC sent a letter to Castro informing him of the administrative requirements for bringing a claim under Title VII. In spite of this letter, however, Castro never contacted an EEO counselor concerning his employment discrimination claim, nor did he file a formal complaint with the agency. Castro's failure to adhere to the requirements governing federal employees who initiate Title VII charges precludes his Title VII civil

action. *See, e.g., Brown,* 425 U.S. at 832–35, 96 S.Ct. at 1967–69; *Kizas,* 707 F.2d at 543–46.

■ We also conclude that Diaz Diaz's Title VII civil action is precluded because he did not exhaust his administrative remedies. The record indicates that after the expiration of his appointment with the FDIC, Diaz Diaz filed an appeal with the MSPB, and a subsequent complaint with the EEO Office of the FDIC. In both actions, Diaz Diaz alleged discrimination on the basis of age; however, none of the allegations contained in either action referred to discrimination on the basis of national origin.[2] Because Diaz Diaz failed to raise his claim of discrimination on the basis of national origin in the appropriate administrative proceedings, he is foreclosed from raising that claim in a civil action brought pursuant to Title VII. *See Siegel v. Kreps,* 654 F.2d 773, 778 (D.C.Cir.1981).[3]

*Age Discrimination in Employment Act Claims*

Appellants assert that the nonrenewal of their appointments with the FDIC constituted age discrimination, contrary to § 633(a) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

■ Under the ADEA, a federal employee who believes that he or she has been the victim of age discrimination has available two alternative avenues of relief. First, he or she may file a formal complaint with the EEOC and pursue an administrative remedy. If denied relief, he or she may then commence a civil action. *See* 29 U.S.C. §§ 633a(c), (d); *Ray v. Nimmo,* 704 F.2d 1480, 1483 (11th Cir.1983). Second, in lieu of pursuing administrative relief, the employee may proceed directly to federal district court providing he or she initiates the civil suit no later than 180 days from the alleged discriminatory act, and providing that he or she first has filed a notice of intent to sue with the EEOC at least 30 days prior to commencing suit. *See* 29 U.S.C. § 633a(d); *Ray,* 704 F.2d at 1483.

■ In this case, Castro commenced a civil action under the ADEA without initially filing either a formal complaint of age discrimination or a notice of intent to sue with the EEOC. Because Castro did not comply with the requirements of § 633a(d) for initiating a civil action under the ADEA, the district court properly dismissed his ADEA claim.[4] *See Siegel,* 654 F.2d at 778, n. 16.

Like Castro, Diaz Diaz never filed a notice of intent to sue with the EEOC prior to initiating his civil action under the ADEA. However, unlike Castro, it appears that Diaz Diaz did attempt to pursue the alternative avenue for relief under the ADEA; namely, the filing of a complaint with the agency and the pursuit of an administrative remedy. As previously noted, Diaz Diaz initially pursued an appeal with the

---

**2.** Castro's argument that the MSPB or EEO Office should have known that Diaz Diaz was alleging discrimination on the basis of national origin by the fact that he is Puerto Rican and by the fact that he alleged discrimination on the basis of age is contrary to both logic and law.

**3.** Although appellants contend that they also may assert their employment discrimination claims directly under the Constitution, section 717 affords the exclusive judicial remedy for claims of discrimination in federal employment. *See Ray v. Nimmo,* 704 F.2d 1480, 1485 (11th Cir.1983).

**4.** We note that the "notice of intent to sue" requirement of 29 U.S.C. § 633a(d) is subject to modification or excuse for equitable reasons. *See Ray v. Nimmo,* 704 F.2d 1480, 1483 (11th

Cir.1983); *Paterson v. Weinberger,* 644 F.2d 521, 524 (5th Cir.1981) (plaintiff may claim equitable grounds for not having filed notice of intent to sue, and must prove that the reasons he or she was prevented from filing can be blamed on the employing agency). Castro argues that he was denied the opportunity to initiate a claim with the EEOC because after he submitted an informal grievance memo to the FDIC, he was notified that an agency decision declining extension of a temporary appointment was not covered by the FDIC's grievance procedures. However, there is nothing in the record to indicate that, by this or any other action, the FDIC prevented Castro from contacting an EEO counsel or from filing a notice of intent to sue. Thus, Castro has presented no reason to justify excusing his failure to comply with the requirements of sec. 633a(d).

MSPB, in which he challenged the FDIC's decision not to renew his appointment, and alleged that he was the victim of age discrimination. The record indicates that Diaz Diaz also contacted an EEO counselor concerning his age discrimination claim. Diaz Diaz subsequently filed what appears to have been a timely complaint with the EEO Office of the FDIC in which he alleged employment discrimination on the basis of age. In a letter dated June 6, 1983, the director of the EEO Office of the FDIC informed Diaz Diaz that because he had taken an appeal to the MSPB prior to filing a complaint with the EEO Office, the EEO Office was required to cancel his complaint pursuant to an administrative regulation.[5] The letter also provided, "... we remain open to consider any appropriate instruction or direction issued by the Merit Systems Protection Board (MSPB) in connection with your appeal to that agency."

The MSPB subsequently ordered a hearing to be held on September 12, 1983, to determine whether it had jurisdiction over Diaz Diaz's appeal. The MSPB order also indicated that after the jurisdictional determination was made, if a hearing was to be held on the merits, that hearing would be on September 14, 1983. In a letter dated August 22, 1983, Diaz Diaz informed the MSPB that he was withdrawing his appeal to that agency. There is no indication in the record that Diaz Diaz pursued further administrative relief regarding his age discrimination claim prior to filing his civil action.

▰ We conclude that Diaz Diaz's voluntary abandonment of the administrative remedies he had chosen to pursue precludes his civil action under the ADEA. As the Third Circuit has noted, once a person alleging discrimination under the ADEA has chosen to pursue his or her administrative remedies by filing a complaint with the EEOC, it would be inconsistent with the purposes of the ADEA and with the Con-

gressional intent to allow that person to abandon those remedies and file a civil action. *See Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir.1981). In *Purtill*, the court stated:

"Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation or conciliation. Absent an indication of contrary congressional intent, we will not countenance circumventing the administrative process in this manner."

658 F.2d at 138. We find this reasoning persuasive.

In this case, although the EEO Office of the FDIC cancelled Diaz Diaz's complaint because his appeal to the MSPB was pending, it also stated that it would consider any appropriate instruction or direction issued by the MSPB in connection with Diaz Diaz's appeal to that agency. Diaz Diaz did not attend the hearing scheduled by the MSPB, and he voluntarily withdrew his appeal to that agency. To allow him to initiate a civil action after abandoning the administrative remedies he had chosen to pursue is inconsistent with one of the central objectives of § 633a; namely, to encourage mediation or conciliation so as to render a civil action unnecessary. *See Purtill*, 658 F.2d at 138. We therefore conclude that the district court properly dismissed Diaz Diaz's ADEA claims.

### 42 U.S.C. § 1983 Claims

▰ Appellants also argue that they are entitled to relief under 42 U.S.C. § 1983. However, we conclude that the district court properly dismissed appellants' § 1983

---

5. Under 29 C.F.R. § 1613.404(a), the EEOC must cancel a complaint pursuant to 29 C.F.R. § 1613.405(b) if the MSPB considered, or is considering, allegations of discrimination raised in a mixed case complaint. A mixed case complaint includes a complaint of employment discrimination relating to an action taken by an agency, which has been filed with a federal agency and which may be appealed to the MSPB. *See* 29 C.F.R. § 1613.402.

claims. Section 1983 ordinarily applies to situations involving officials acting under color of *state* law. That statute does not provide redress for deprivations of statutory or constitutional rights caused by *federal* officials acting pursuant to *federal* law. *See District of Columbia v. Carter,* 409 U.S. 418, 424–25, 93 S.Ct. 602, 606, 34 L.Ed.2d 613 (1973); *Zernial v. United States,* 714 F.2d 431, 435 (5th Cir.1983). In this case, appellants contend that they were deprived of their statutory and constitutional rights by the actions of federal officials acting under federal law. Such allegations are not within the purview of § 1983, and appellants therefore have failed to state a claim for which relief can be granted under that provision.

*Claims Under Federal Tort Claims Act*

Appellants assert that they are entitled to damages under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), and 28 U.S.C. § 2671 *et seq.* Section 1346(b) grants to federal district courts exclusive jurisdiction to hear claims against the United States "... where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, whether a federal official is liable under § 1346(b) ordinarily requires reference to the law of the state where the official's actions took place. *See, e.g., Brown v. United States,* 653 F.2d 196, 198 (5th Cir.1981).

In this case, appellants have alleged no violations of the law of the place where the federal officials acted. Appellants instead allege violations of *federal* statutory and constitutional law. We do not believe, however, that appellants' federal claims are cognizable under the FTCA. There is nothing in the FTCA to indicate that the United States has waived its sovereign immunity from those federal statutory and constitutional claims advanced by appellants. *See*

*Brown,* 653 F.2d at 199–202. *See also Birnbaum v. United States,* 588 F.2d 319, 327 (2d Cir.1978) ("We do not believe that the Federal Tort Claims Act comprehends *federal constitutional* torts in its reference to the 'law of the place' under § 1346b." (Emphasis in original)). We also note that claims such as appellants' based on an alleged wrongful discharge under a federal employment contract have been held not to fall within the FTCA. *See, e.g., Young v. United States,* 498 F.2d 1211, 1218 (5th Cir.1974); *Steinagel v. Jacobson,* 507 F.Supp. 288, 290 (S.D.Ohio 1980). Therefore, the district court properly dismissed appellants' FTCA claims.[6]

*Due Process Claims*

Appellants contend that the FDIC's failure to provide them with notice and a hearing prior to the nonrenewal of their appointments violated their right to due process under the Fifth and Fourteenth Amendments to the United States Constitution. We disagree.

The requirements of procedural due process only apply to a deprivation of interests within the Fifth and Fourteenth Amendments' protection of property and liberty. To claim a property interest in a benefit, a person clearly "... must have more than a unilateral expectation of it. He must ... have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In addition, a protected property interest is not created by the Constitution; rather, it is created and defined by "... existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

6. Appellants argue that because the alleged violations in this case occurred in Puerto Rico, and because Puerto Rico is not a state of the United States, the "law of the place" under 28 U.S.C. § 1346(b) for purposes of their FTCA claims is federal law. They therefore contend that their claims based on federal statutory and constitutional law are cognizable under the FTCA. We find no merit to this argument.

Appellants contend that their appointments with the FDIC fell within the provisions of 5 U.S.C. § 3304a, and that this supports their claims of entitlement to continued employment with the FDIC. The statute provides in pertinent part:

**Competitive service; career appointment after 3 years' temporary service** (a) An individual serving in a position in the competitive service under an indefinite appointment or a temporary appointment pending establishment of a register ... acquires competitive status and is entitled to have his appointment converted to a career appointment, without condition, when

(1) he completes, without break in service of more than 30 days, a total of at least 3 years of service in such a position;

(2) he passes a suitable noncompetitive examination;

(3) the appointing authority (A) recommends to the Office of Personnel Management that the appointment of the individual be converted to a career appointment and (B) certifies to the Office that the work performance of the individual for the past 12 months has been satisfactory; and

(4) he meets Office qualification requirements for the position and is otherwise eligible for career appointment."

Appellants appear to argue that § 3304a is applicable to them because of the length of time they were employed with the FDIC, and because their appointments were considered temporary. However, § 3304a applies *only* to persons employed in the competitive service under an indefinite appointment, or in a *temporary appointment pending establishment of a register.* (Otherwise known as a "TAPER" position; *see* 5 C.F.R. § 316.201). In this case, neither appellant served in a competitive service position or in a "TAPER"

position with the FDIC that would have entitled him to have his position converted to a career appointment under § 3304a. Therefore, appellants' reliance on § 3304a as a basis for alleging a protected property interest in employment is misplaced.

We also agree with the district court that there is nothing in the terms of appellants' appointments with the FDIC that could give rise to a legitimate claim of entitlement to continued employment. Both appellants held a series of temporary Liquidation Graded appointments with the FDIC that the Office of Personnel Management had designated as excepted service appointments under former 5 C.F.R. § 213.3133.[7] Each appointment was of finite, temporary duration and did not confer competitive status nor lead to career or career-conditional appointments without some further examination or qualification. In addition, the district court found that individuals employed by the FDIC as Liquidation Graded appointees are apprised of their temporary status when they initially are hired. Thus, such appointments, by their very nature and terms, could not give rise to a legitimate expectation of continued employment once those appointments expired. Although appellants may have had an abstract concern in ensuring that their appointments were renewed, that does not rise to the level of a property interest which is protected by procedural due process. *See Roth,* 408 U.S. at 578, 92 S.Ct. at 2709. In addition, although appellants had a series of successive appointments that the FDIC renewed, it is well established that longevity alone does not create a property interest in continued employment that is subject to procedural due process protections. *See Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1099 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). We therefore conclude that appellants had no property interest in continued employ-

---

**7.** The adoption of regulations governing excepted service appointments is authorized under 5 U.S.C. §§ 3301 and 3302.

ment that would have required adherence to procedural due process requirements.[8]

■ Appellants also contend that they were deprived of liberty without due process of law. Specifically, appellant Castro asserts that his "good name and reputation" were unjustifiably injured by the FDIC's nonrenewal of his appointment. We conclude, however, that neither appellant has alleged facts indicating that the FDIC's nonrenewal of their appointments implicated any liberty interests of the appellants that would be entitled to procedural due process protection. There is no indication that the FDIC imposed a stigma on the appellants or did anything to damage their standing in the community. In addition, there is no indication that FDIC imposed any disability on the appellants that would foreclose their pursuit of other employment opportunities. *See Roth*, 408 U.S. at 573, 92 S.Ct. at 2707. Rather, the record reveals that the FDIC merely notified appellants that their temporary appointments would not be renewed. The fact that appellants' appointments were not renewed in this one instance does not establish the type of foreclosure of opportunities amounting to a deprivation of liberty. *See id.* at 574, n. 13, 92 S.Ct. at 2707 n. 13. We therefore conclude that the district court properly dismissed appellants' due process claims.[9]

*Privacy Act Claims*

Appellants also have attempted to raise issues concerning a 1982 investigation into possible irregularities in the San Juan Liquidation Office of the FDIC. They argue that during this investigation, they were interrogated in violation of the Privacy Act, 5 U.S.C. § 552a. Appellants did not raise these issues in the district court. We repeatedly have held that, ordinarily, issues not presented to the trial court cannot be raised for the first time on appeal. *See Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979). We therefore will not address those issues.

*Preliminary Injunctions*

Appellants also appeal the district court's denial of their request for a preliminary injunction. The decision to grant or deny a preliminary injunction is within the district court's discretion. We will reverse that decision only when there has been an abuse of discretion. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

We have held that a plaintiff seeking a preliminary injunction must satisfy the following four criteria:

" '(1) that plaintiff will suffer irreparable injury if the injunction is not granted;

(2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant;

(3) that plaintiff has exhibited a likelihood of success on the merits; and

(4) that the public interest will not be adversely affected by the granting of the injunction.' "

**8.** Appellants also argue that they had a constitutionally protected property right in continued employment because the FDIC was required to convert their appointments from excepted service to career or competitive service. In support of this argument, appellants cite several federal regulations, including 5 C.F.R. §§ 316.-401 and 316.702. Appellants additionally refer to a memorandum issued by the director of the FDIC Division of Liquidation and the director of the Office of Personnel Management, which authorized conversion of field, General Graded Liquidator-at-Large positions from excepted service to career or career-conditional appointments. We conclude, however, that neither the regulations appellants cite, nor the memorandum, is applicable to appellants' appointments with the FDIC. We also conclude that appel-

lants were not entitled to the procedural safeguards in 5 U.S.C. § 7513, which apply to adverse actions involving federal employees. Those safeguards are available only if the individual qualifies as an "employee" under 5 U.S.C. § 7511. As the district court properly concluded, neither appellant meets the definition of "employee" set forth in § 7511.

**9.** Appellants contend that one issue in the instant case is whether the FDIC's refusal to grant them notice and a hearing constitutes a violation of the First Amendment right to freedom of speech. Based on the record before us, however, we find nothing to indicate that appellants' First Amendment rights were in any way implicated by the FDIC's actions in this case.

*Id.,* quoting *Women's Community Health Ctr., Inc. v. Cohen,* 477 F.Supp. 542, 544 (D.Me.1979) (citations omitted).

█ In this case, the district court's denial of appellants' request for a preliminary injunction was based on its conclusion that appellants had failed to demonstrate irreparable injury or a likelihood of success on the merits. Although appellants alleged that the FDIC's failure to renew their appointments caused them irreparable injury, the district court correctly held that appellants' allegations of inability to obtain other employment and loss of credit were insufficient to establish irreparable injury. *See Soldevila v. Secretary of Agriculture of U.S.,* 512 F.2d 427, 430 (1st Cir.1975) ("... 'insufficiency of savings or difficulties in immediately obtaining other employment-external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury ...' ", quoting *Sampson v. Murray,* 415 U.S. 61, 92, n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166 (1974)). The district court also properly concluded that appellants' allegations that their children were deprived of health insurance coverage did not support a claim of irreparable injury in this case. *See, e.g., Morgan v. Fletcher,* 518 F.2d 236, 240 (5th Cir.1975). In addition, the district court properly considered the fact that appellants would have an adequate remedy at law (backpay) if they prevailed on the merits. *See Washington v. Walker,* 529 F.2d 1062, 1065 (7th Cir.1976). Finally, as the district court noted, appellants' delay of more than one year before seeking injunctive relief militates against a claim of irreparable injury. *See Ekanem v. Health & Hospital Corp. of Marion County,* 589 F.2d 316, 321 (7th Cir.1978).

In concluding that appellants had not demonstrated a substantial likelihood of success on the merits, the district court applied the proper legal standards to the appropriate facts. Based on our review of appellants' claims, we agree with the district court's conclusion. We therefore conclude that the district court did not abuse its discretion in denying the preliminary injunction.

*Injunction Against Further Litigation*

As previously noted, the district court issued an injunction enjoining appellants from filing additional pleadings in this case and from relitigating matters set forth in this case or prior cases against the United States and the FDIC concerning the nonrenewal of their temporary appointments. The injunction, which appellees requested, was issued pursuant to 28 U.S.C. § 1651(a), which authorizes federal courts to issue "... writs necessary or appropriate in aid of their respective jurisdictions ..."

█ A decision to issue an injunction under § 1651(a) is within the district court's discretion; therefore, our determination on review of that decision is whether the district court abused its discretion. *See Harrelson v. United States,* 613 F.2d 114, 116 (5th Cir.1980).

We have recognized that, in extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate. *Gordon v. United States Department of Justice,* 558 F.2d 618 (1st Cir.1977) (per curiam). Other circuits have similarly held that district courts have the power under 28 U.S.C. 1651(a) to enjoin litigants who abuse the court system by harassing their opponents. *See, e.g., Harrelson,* 613 F.2d at 116; *Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972) (per curiam), *appeal dismissed,* 409 U.S. 1031, 93 S.Ct. 540, 34 L.Ed.2d 482 (1972).

█ We conclude that the district court did not abuse its discretion in issuing an injunction against further litigation of the matter of plaintiffs' nonrenewals. As the district court properly noted, appellants' apparent "affinity for litigation," standing alone, would not provide sufficient justification to issue an injunction. *Pavilonis v. King,* 626 F.2d 1075, 1079 (1st Cir.1980), *cert. denied,* 449 U.S. 829, 101 S.Ct. 96, 66

L.Ed.2d 34 (1980). However, the district court found that appellants' actions went beyond mere litigiousness, noting, "... plaintiffs' vendetta against the United States and the FDIC has been repeatedly and vividly demonstrated." *Castro*, 584 F.Supp. at 265. The court examined the history of appellants' series of suits against the FDIC and concluded that those actions were brought "... only to vex, harass, and annoy." *Id.* In specifically finding that appellants' present action was frivolous and malicious, the court noted that appellants had made allegations in the instant case that were almost identical to those contained in previous actions. The court additionally took note of the fact that during the course of litigation in this case, appellants filed several "... frivolous motions which amply demonstrate to this Court their contempt for the judicial process ..." [10] *Id.* at 264. The court also cited examples to support its observation that Castro's motions and papers filed during the instant suit "... have, on occasion, been personally insulting and abusive to defendants, their attorneys and individual officers and employees of the FDIC." *Id.* at 266. The harassing and vexatious char-

acter of the instant litigation was a factor that the district court properly could consider in determining whether to issue the injunction. *See Kinnear-Weed Corp. v. Humble Oil & Refining Co.*, 441 F.2d 631, 637 (5th Cir.1971).

The record in this case supports the district court's findings. It appears that appellants have made allegations in previous suits that are virtually identical to certain allegations made in the instant case. In addition, the history of this and other actions filed by appellants against the United States, the FDIC, and various individual defendants demonstrates appellants' propensity to repeatedly file suit against the same defendants based on the nonrenewal of their appointments, even in the face of adverse judgments.[11] The record also indicates that appellants are likely to make future attempts to litigate the same or similar issues raised in this case.[12] Given the frivolous and vexatious nature of this and prior cases filed by appellants, and appellants' propensity to file repeated suits against appellees involving the same or similar claims, the district court did not

---

**10.** The motions referred to by the district court include a Motion to Suppress Inauthentic and Irrelevant Evidence, in which appellants challenged the authenticity of a document they had included as an exhibit in a previous action against the FDIC; their petition to disbar certain attorneys; and their filing of a new set of interrogatories in violation of an order staying all discovery until resolution of the motions filed by appellees.

**11.** For example, in case No. 83–1123 TR, appellants asserted various claims against the FDIC relating to the FDIC's nonrenewal of their appointments, and the FDIC's failure to release a Corporate Audit Report. The district court dismissed the complaint for lack of jurisdiction over some defendants, and because the complaint made claims as to which no subject matter jurisdiction existed, or which failed to state a claim for which relief could be granted. *Diaz and Castro v. FDIC, et al.*, No. 83–1123 (TR) (D.P.R. September 30, 1983). While that action was pending, appellants filed a separate, 56-page complaint against the United States and the FDIC, which was dismissed for failure to comply with Rule 8, Fed.R.Civ.P. On October 21, 1983, after the district court rendered a decision

in No. 83–1123 (TR), Castro filed a complaint against the United States, which again related to the FDIC's failure to release the Corporate Audit Report. In addition, Castro alleged in an apparent reference to the FDIC's November 10, 1982, nonrenewal of his appointment, that he had suffered a loss of salary from November 10, 1982, and loss of credit. Castro subsequently tendered five additional complaints relating to the FDIC's nonrenewal of his appointment, alleging that the nonrenewal violated federal statutory and constitutional provisions. Those complaints raised issues virtually identical to the issues raised in this case. Castro later withdrew those five complaints. After the district court dismissed the October 21, 1983, complaint because it concluded that Castro had maliciously filed the complaint, appellants filed the instant action.

**12.** Appellants have indicated that "[w]hen a final decision is reached on these cases, if the plaintiffs lose they will simply refile their claim and repeat the same process all over again ..." (Statement contained in exhibit entitled "Notification of Valid Service of Process and Compliance with Court Order", signed by Castro and Diaz Diaz).

abuse it discretion in concluding that an injunction was warranted.[13]

In reviewing the particular injunction issued in this case, we take into account that if an injunction against future litigation were couched in overly broad terms, this could impermissibly infringe upon a litigator's right of access to the courts. *See Sires v. Gabriel,* 748 F.2d 49, 51 (1st Cir.1984) (per curiam); *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1525 (9th Cir.1983). Thus, we have emphasized that an injunction against litigation should be narrowly drawn to fit the specific vice encountered. *Sires,* 748 F.2d at 51–52.

From the wording of the injunction issued in this case, it appears that the specific vice the district court was attempting to address, and prohibit, was appellants' propensity for filing frivolous and vexatious suits against the appellees aimed at repeatedly litigating the same or similar issues raised in this and prior cases concerning the nonrenewal of appellants' appointments. The injunction is tailored to fit that vice. It does not preclude access to the courts concerning other types of matters. In addition, although appellants contend that the injunction precluded them

from filing a timely motion for reconsideration in the district court, we doubt that it had that effect. The issue of reconsideration is, moreover, moot by now.

*Assessment of Costs in District Court*

Appellants also appeal the district court's assessment of costs against them pursuant to 28 U.S.C. § 1927.[14] Although we question without deciding the applicability of § 1927 to this case,[15] the only indication in the record of any costs awarded to appellees is an order dated August 30, 1984, taxing costs in favor of the appellees pursuant to a bill of costs that appellees previously submitted to the district court.[16] The costs awarded in the August 30, 1984, order are those to which a prevailing party ordinarily is entitled under 28 U.S.C. § 1920 and Fed.R.Civ.P. 54(d). There is no indication in the record that appellees requested or received any "excess costs, expenses, and attorneys' fees" under § 1927. Therefore, even if the district court erred in assessing excess costs against appellants under § 1927, such error was harmless in this case.

*Double Costs and Damages*

Appellants have raised a plethora of other issues. We have considered those issues and find them to be without merit.

---

13. We note that in *Sires v. Gabriel,* 748 F.2d 49 (1st Cir.1984) (per curiam), we vacated an injunction against future litigation. The injunction was expansive and precluded plaintiff from filing any new complaints or petitions in any form without a district court judge's authorization. Because the district court failed to make findings indicating that plaintiff's litigation efforts in some way abused the judicial process or harrassed defendants, we remanded to the district court for consideration of whether such factors were present.

   Unlike *Sires,* the district court in this case specifically found that appellants' present action was frivolous and malicious, and concluded that appellants' prior actions against appellees were brought to vex, harrass, and annoy. The court therefore tailored the injunction to address this specific problem.

14. 28 U.S.C. § 1927 provides:

   "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreason-

ably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

15. By its terms, 28 U.S.C. § 1927 only applies to "[a]ny *attorney or other person admitted* to conduct cases in any court of the United States or any Territory ..." (Emphasis added). In *1507 Corporation v. Henderson,* 447 F.2d 540 (7th Cir.1971), the court interpreted the predecessor to current § 1927 as authorizing recovery of excess costs from any attorney or otherwise admitted representative, not from a party. The court held that § 1927 was inapplicable to a party in that case who had conducted the litigation on his own behalf without counsel. *Id.* at 542. In this case, both appellants proceeded *pro se* without counsel.

16. These costs consist of court reporter fees for a transcript of a preliminary injunction hearing, a witness attendance fee and witness expenses, and fees for exemplification and copies of papers necessarily obtained for appellees' use in this case.

Appellees request that we award double costs and "just damages" pursuant to Rule 38, Fed.R.App.P. As part of the "just damages", appellees seek attorneys' fees incurred in defending this appeal. For the present, however, we limit ourselves to granting double costs.

*The judgment of the district court is affirmed with double costs to be awarded against appellants.*