43 F.3d 1456
 75 A.F.T.R.2d 95-910
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Andrew TEMPELMAN & Priscilla Tempelman, Plaintiffs, Appellants,
v.
Patricia BEASLEY, Examiner for the U.S. Treasury Department,
Internal Revenue Service, Defendant, Appellee.
 No. 93-2337.
 United States Court of Appeals,
First Circuit.
 Dec. 21, 1994.
 
 APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge ]
 Andrew Tempelman and Priscilla Tempelman on brief pro se.
 Paul M. Gagnon, United States Attorney, Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Jonathan S. Cohen, and Sarah Knutson, Attorneys, Tax Division, Department of Justice, on brief for appellee.
 D.N.H.
 AFFIRMED IN PART, VACATED IN PART.
 Before Torruella, Chief Judge, Selya and Cyr, Circuit Judges.
 Per Curiam.
 
 
 1
 Plaintiffs Andrew and Priscilla Tempelman are long-time tax protesters-proponents of the view that the United States internal revenue system is invalid. In 1992, based upon audits of plaintiffs' returns for the years 1986 through 1988, the Internal Revenue Service (IRS) determined, inter alia, that various deductions had been improperly claimed and that additional taxes were owed. Plaintiffs successfully challenged this determination in tax court, where a settlement with the IRS resulted in the elimination of most or all of such liability. They then filed the instant pro se action in state court, seeking damages from the IRS agent who had conducted the audits. Plaintiffs charged that defendant had deliberately and maliciously imposed further tax liabilities in retaliation for their dissident views, in violation of various statutory and constitutional provisions.
 
 
 2
 Defendant removed the action to federal court and then moved to dismiss, claiming that parts of the complaint were jurisdictionally defective while other parts failed to state a claim. In a comprehensive opinion, the district court agreed and dismissed the complaint under Fed. R. Civ. P. 12(b)(1) & (6). The court went on to find that plaintiffs were engaged in a "vendetta" against the IRS, having filed numerous frivolous cases against the agency and its employees solely for the purpose of harassment. As a result, the court enjoined plaintiffs from filing any further such actions without judicial approval. It also imposed monetary sanctions. Plaintiffs, in summary fashion, challenge each of these rulings on appeal.[1]
 
 I.
 
 3
 We need not linger long over the merits of the complaint. Plaintiffs have relied on a plethora of statutory provisions in an attempt to establish jurisdiction and/or state a claim. Each proves unavailing. For example, two criminal provisions on which they rely-18 U.S.C. Secs. 241, 242-do not give rise to a civil action for damages. See, e.g., Rodi v. Ventetuolo, 941 F.2d 22, 29 n.8 (1st Cir. 1991); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam). A third such provision, contained in 26 U.S.C. Sec. 7214, is likewise inapposite; "a precondition to a taxpayer suit for damages against a revenue agent under this provision is the criminal conviction of the agent." Hollett v. Browning, 711 F. Supp. 1009, 1012 n.2 (E.D. Cal. 1988). Plaintiffs' reliance on 42 U.S.C. Secs. 1983, 1985 (and their jurisdictional counterpart, 28 U.S.C. Sec. 1343) is misplaced. Section 1983 is inapplicable to federal officials not alleged to have acted "under color of state law." See, e.g., District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973); Soldevilla v. Secretary of Agric., 512 F.2d 427, 429 (1st Cir. 1975). In turn, as the district court discussed at length, plaintiffs have not come close to stating a claim under Sec. 1985.
 
 
 4
 No more helpful is plaintiffs' invocation of the Federal Tort Claims Act, 28 U.S.C. Secs. 1346(b), 2671-80. Explicitly excluded from the FTCA's ambit is "[a]ny claim arising in respect of the assessment or collection of any tax." Id. Sec. 2680(c); see, e.g., McMillen v. United States Dep't of Treasury, 960 F.2d 187, 188 (1st Cir. 1991) (per curiam). Contrary to plaintiffs' contention, the allegations here fall readily within this exception. See, e.g., National Commodity and Barter Ass'n v. Gibbs, 886 F.2d 1240, 1246 (10th Cir. 1989); Capozzoli v. Tracey, 663 F.2d 654, 658 (5th Cir. 1981) (Sec. 2680(c) has been "interpreted broadly" to cover activities that were "in any way related to the [IRS] agents' official duties").
 
 
 5
 Plaintiffs' reliance on 26 U.S.C. Sec. 7433(a) also proves misplaced. This provision authorizes a civil action for damages whenever an IRS official "recklessly or intentionally disregards" the tax laws in connection with "any collection" of federal taxes. Yet plaintiffs are complaining of alleged misconduct that occurred in connection with the calculation of their tax liability, rather than with the collection thereof. Such a claim is not cognizable under Sec. 7433. See, e.g., Shaw v. United States, 20 F.3d 182, 184 (5th Cir.), cert. denied, 63 U.S.L.W. 3181 (1994); Gonsalves v. IRS, 975 F.2d 13, 16 (1st Cir. 1992) (per curiam). Furthermore, a prerequisite to any such action is that the taxpayer exhaust his or her administrative remedies, see 26 U.S.C. Sec. 7433(d)(1), by filing a written administrative claim with "the district director ... of the district in which the taxpayer currently resides," 26 C.F.R. Sec. 301.7433-1(e)(1). There is no suggestion that plaintiffs have complied with this requirement. The failure to do so deprives the court of jurisdiction. See, e.g., Venen v. United States, F.3d , 1994 WL 567016, at * 2-* 3 (3d Cir. 1994); Conforte v. United States, 979 F.2d 1375, 1377 (9th Cir. 1992).
 
 
 6
 Finally, plaintiffs have sought to advance a Bivens claim against defendant in her personal capacity. See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In this regard, they contend that defendant's actions abridged their rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments. Because plaintiffs on appeal have mentioned the point only in passing, it suffices to note the following. As we explained in McMillen, courts have been disinclined to create Bivens remedies in the internal revenue context in light of the "remedial mechanisms for constitutional violations" that Congress has already implemented in this area. 960 F.2d at 190-91 (quoting Schweiker v. Chilicky, 487 U.S. 412, 423 (1988)). In particular, courts have specifically disavowed any Bivens remedy for alleged violations associated with tax assessment and collection activities. See, e.g., Vennes v. An Unknown Number of Unidentified Agents, 26 F.3d 1448, 1453-54 (8th Cir.), petition for cert. filed, 63 U.S.L.W. 3192 (1994); McMillen, 960 F.2d at 190-91; Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990), cert. denied, 498 U.S. 1096 (1991); Gibbs, 886 F.2d at 1247-48; Tonn v. United States, 847 F. Supp. 711, 716-18 (D. Minn. 1993), aff'd, 27 F.3d 1356 (8th Cir. 1994) (per curiam); see also Cameron v. IRS, 773 F.2d 126, 128-29 (7th Cir. 1985); cf. FDIC v. Meyer, 114 S. Ct. 996, 1005-06 (1994) (declining to imply Bivens action against federal agencies).
 
 
 7
 Most of these cases, it is true, involved alleged due process violations, whereas plaintiffs have also claimed abridgement of their First (and Fourth) Amendment rights.[2] At least under the facts alleged, however, this is without consequence. The Tenth Circuit's pair of opinions in Gibbs ("NCBA I "), 886 F.2d 1240, and National Commodity and Barter Ass'n v. Archer, 31 F.3d 1521 (10th Cir. 1994) ("NCBA II ") (the appeal following remand), are instructive. With respect to allegations that IRS agents had engaged in widespread misconduct with respect to a tax-protesting organization-including repeated raids of its headquarters and its members' homes and seizures of membership records-the court held that a Bivens claim had been stated under the First and Fourth Amendments. See NCBA I, 886 F.2d at 1248; NCBA II, 31 F.3d at 1527-32. However, with respect to allegations that the IRS had effected "wrongful jeopardy assessments," the court declined to recognize a First or Fourth Amendment Bivens remedy "[i]n light of the remedies afforded elsewhere." Id. at 1532. So here, we think the panoply of statutory remedies available militates against recognition of a First or Fourth Amendment Bivens remedy with respect to the wrongful assessment of plaintiffs' tax liability.[3]
 
 II.
 
 8
 Remaining for consideration is the propriety of the sanctions imposed upon plaintiffs-as to which some additional background is necessary. In response to the district court's order of dismissal, plaintiffs filed a motion for reconsideration. Displaying a lack of familiarity with the sovereign immunity doctrine, they there castigated the court for leaving them with "no remedy" in "clear defiance of and contempt for federal law." They then proceeded, in increasingly intemperate language, to warn the district judge that unless the dismissal were rescinded he would "stand liable" for possible constitutional violations and would run the risk of impeachment and of being named as "a co-conspirator in a far larger Civil Rights matter which is coming before this court in a series of actions." According to their certificate of service, plaintiffs sent copies of this motion to some 28 political officials and various media outlets.
 
 
 9
 The district judge held a hearing on the motion, at which plaintiffs enumerated at some length (and in reasonably decorous fashion) their objections to the order of dismissal. The court thereafter, in an oral ruling, voiced its disapproval of plaintiffs' conduct. Their veiled suggestion that the court had conspired with the government, it held, bordered on "criminal contempt." Their treatment of court personnel had been "insulting" and "bully[ing]." And their "vendetta against the IRS and its employees"-pursued through a series of "frivolous" and "harassing" lawsuits-had "gone on too long." Accordingly, the court entered a sua sponte order enjoining plaintiffs from filing any further actions in the District of New Hampshire "against the IRS," including suits removable from state court, without judicial approval. It also imposed sanctions in the amount of $293 (representing the travel costs incurred by government counsel to attend the hearing). In a subsequent written order in support of this ruling, the court noted that the instant case was one of eleven actions that plaintiffs had prosecuted in New Hampshire federal court since 1986, ten of which the court found had involved the IRS or its agents. The court reiterated its injunction as follows:
 
 
 10
 The clerk of this court is ordered not to accept any more cases from the plaintiff unless screened by a Judge Magistrate or Judge of this court. If the plaintiff by subterfuge, or any other means[,] sues in a state court knowing that it has to be removed by the government to this court, he shall be subject to immediate sanctions....
 
 
 11
 The court also there denied the motion for reconsideration.
 
 
 12
 Federal courts, of course, "possess discretionary powers to regulate the conduct of abusive litigants." Cok v. Family Court of Rhode Island, 985 F.2d 32, 34 (1st Cir. 1993) (per curiam). Accordingly, "in extreme circumstances involving groundless encroachment upon the limited time and resources of the court and other parties, an injunction barring a party from filing and processing frivolous and vexatious lawsuits may be appropriate." Castro v. United States, 775 F.2d 399, 408 (1st Cir. 1985) (per curiam). Any bar on future litigation must be "narrowly tailored" to "fit the specific vice encountered." Sires v. Gabriel, 748 F.2d 49, 51 (1st Cir. 1984) (per curiam). As we have explained, if such an injunction "were couched in overly broad terms, this could impermissibly infringe upon a litigator's right of access to the courts." Castro, 775 F.2d at 410. We review the entry of such an injunction for abuse of discretion. See, e.g ., id. at 408.
 
 
 13
 We think it obvious, under the circumstances, that the district court intended to restrict the filing of any new actions against the IRS or its agents (as indicated in the oral order), rather than to restrict court access across the board (as suggested in the written order). Even as so construed, the injunction raises several concerns. An initial problem is that plaintiffs were not "warned or otherwise given notice that filing restrictions were contemplated," and thus were not afforded "an opportunity to respond" before entry thereof. Cok, 985 F.2d at 35. In Cok, just as in the instant case, the court entered an injunction on a sua sponte basis at the close of a motion hearing. We noted that where the plaintiff had been deprived of even "informal" notice-such as might be provided by way of a defendant's request for an injunction or a magistrate's recommendation thereof-the customary route was to issue a show cause order or a "cautionary" edict. Id. Nothing of the sort occurred here.[4]
 
 
 14
 Second, we are unconvinced that the circumstances here-at least as developed on the present record-were as yet so "extreme" as to warrant such a measure. Castro, 775 F.2d at 408. Plaintiffs contend that, contrary to the court's finding, only eight of their eleven lawsuits were directed against the IRS or its agents. While they have offered no support therefor, an independent review confirms this contention.[5] Of these, the court indicated in its written order that two others involved a "rehash" of the issues involved in the instant complaint; the nature of the other cases is undisclosed (as is the disposition thereof, although it appears safe to conclude that each was unsuccessful). It is thus unclear to what extent plaintiffs have exhibited a "propensity to file repeated suits against [the IRS or its agents] involving the same or similar claims." Id. at 409. Compare, e.g., Cok, 985 F.2d at 35, 36 (suggesting that more narrowly drawn ban on further attempts to remove proceedings from Family Court divorce case would have been approved); Castro, 775 F.2d at 409-10 (upholding ban on further challenges to nonrenewal of appellants' appointment); see Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir.) (observing that "litigiousness alone will not support an injunction"), cert. denied, 449 U.S. 829 (1980).
 
 
 15
 In turn, it is worth noting that the issue underlying the instant action-the propriety of defendant's calculation of plaintiffs' tax liability-was resolved in plaintiffs' favor in tax court, and that their First Amendment Bivens claim, while ultimately unavailing, would seem to rise above the frivolous (albeit narrowly). At least a portion of plaintiffs' litigation efforts, in other words, has contained a glimmer of merit. We also observe that less severe measures such as the imposition of monetary sanctions-which we uphold in the instant case as an appropriate penalty for plaintiffs' aspersions against the court-might well suffice to forestall future actions of a frivolous and vexatious nature. Cf. Cok, 985 F.2d at 36 (cautioning that injunction restricting court access across the board should be issued "only when abuse is so continuous and widespread as to suggest no reasonable alternative").
 
 
 16
 Finally, several aspects of the injunction as drafted give us pause. The restriction on state court filings is problematic, inasmuch as "[a]buse of state judicial processes is not per se a threat to the jurisdiction of Article III courts." In re Martin-Trigona, 737 F.2d 1254, 1263 (2d Cir. 1984) (vacating extension of injunction to state courts); accord, e.g., Anderson v. Mackall, 128 F.R.D. 223, 226 (E.D. Va. 1988). We understand that plaintiffs' propensity to sue in state court, combined with the automatic right of removal available to the United States and its employees, provided the impetus for such a measure. Yet as other courts have indicated, a narrower restriction ordinarily should suffice. See, e.g., Sassower v. Abrams, 833 F. Supp. 253, 271, 274 (S.D.N.Y. 1993) (issuing injunction directing that, upon removal to federal court of any case brought by plaintiff, leave of court would be required before action could continue). We also observe that no guidelines have been provided explaining what plaintiffs must do to obtain permission to file, see, e.g., Werner v. State of Utah, 32 F.3d 1446, 1448 (10th Cir. 1994)-a matter worthy of note here given the broad category of actions embraced by the injunction.
 
 
 17
 It is important to emphasize that, in the face of plaintiffs' spurious accusations and rancorous tone, the district court's evident exasperation was fully explicable; indeed, the care it devoted to a case bordering on the frivolous is commendable. Nonetheless, in light of the foregoing factors, we think it appropriate to await another day before taking the exceptional step of enjoining further lawsuits.
 
 
 18
 The dismissal of plaintiffs' complaint is affirmed, as is the imposition of monetary sanctions. The injunction barring further court filings is vacated.
 
 
 19
 So ordered.
 
 
 
 [1]
 Given the disposition we reach, there is no need to decide whether the notice of appeal was ineffective as to Priscilla Tempelman, as defendant suggests
 
 
 [2]
 In their district court pleadings, plaintiffs conceded that their Eighth Amendment claim was without merit. A similar conclusion applies as to their Fourteenth Amendment claim. In turn, we have difficulty perceiving how the Fourth Amendment is implicated by plaintiffs' allegations
 
 
 [3]
 Plaintiffs also allege that their suit was improperly removed to federal court. Removal was plainly appropriate under 28 U.S.C. Sec. 1442(a)(1) (pertaining to suits against "[a]ny officer of the United States ... for any act under color of such office"), inasmuch as defendant's relationship to plaintiffs "derived solely from [her] official duties." Willingham v. Morgan, 395 U.S. 402, 409 (1969); accord, e.g., Palermo v. Rorex, 806 F.2d 1266, 1269-70 (5th Cir.) (rejecting argument that defendants were not acting "under color of federal office" because their acts were alleged to have been maliciously motivated), cert. denied, 484 U.S. 819 (1987); see also Arizona v. Manypenny, 451 U.S. 232, 242 (1981) ("the right of removal is absolute for conduct performed under color of federal office"). As such, plaintiffs' inability to subpoena the United States Attorney in order to examine the validity of his 28 U.S.C. Sec. 2679(d) certification-about which they also complain-was without consequence
 As well, plaintiffs object that the district judge recused himself on the same day that he denied their motion for reconsideration. To the contrary, the record reveals that plaintiffs' motion for recusal was denied on that date. We are told that the judge subsequently recused himself from other cases involving plaintiffs-an action that has no bearing on the instant matter.
 
 
 [4]
 While the scheduling notice regarding the hearing is not in the record, there is no indication from the docket sheet that it contained any reference to proposed filing restrictions. We also note that plaintiffs were not afforded an opportunity to respond following imposition of the court's oral order, nor were they invited to file an opposition thereto prior to entry of the written order
 
 
 [5]
 We can say with certainty that two of the listed cases, Tempelman v. United States, No. 91-208, and Tempelman v. Philbrick, No. 92-409, did not involve the IRS, inasmuch as each was the subject of a recent appeal. (The former involved the Postal Service; the latter involved a town moderator.) And a review of the docket sheet reveals that a third such action, Tempelman v. Hebbel, No. 93-110, involved a private defendant