HENRY A. WALL AND LAVINA WALL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wall
Docket No. 32788-88
United States Tax Court
T.C. Memo 1992-321; 1992 Tax Ct. Memo LEXIS 352; 63 T.C.M. (CCH) 3102; T.C.M. (RIA) 92321; June 8, 1992, Filed *352 Lloyd S. Myster, for petitioners. Jack Forsberg, for respondent. GOLDBERG
GOLDBERG
SUPPLEMENTAL MEMORANDUM OPINION GOLDBERG, Special Trial Judge: This matter is before us on petitioners' Motion for Reconsideration (which we granted on March 4, 1992), of T.C. Memo. 1991-611, filed December 10, 1991. The case was heard pursuant to the provisions of section 7443A(b)(3) of the Internal Revenue Code of 1954. In our Memorandum Opinion, we held that petitioners were not entitled to deduct their distributive share of depreciation and energy credit with respect to property held by Independent Energy Systems - (I) (IES - (I)), a limited partnership in which they held an interest, as the equipment had not been "placed in service" within the meaning of section 1.46-3(d)(1), Income Tax Regs.
Petitioners seek reconsideration with respect to our redetermination that the IES - (I) property was not placed in service within the taxable period. We held that no depreciation or energy credit was allowable on the basis of our finding that the IES - (I) property was not placed in service in 1982. The IES - (I) prospectus said that the purpose of IES - (I) was to sell or lease the *353 on-farm energy plant. The portion of the on-farm energy plant held by IES - (I) was intended as a prototype to be refined and used as the basis for manufacturing. IES - (I) clearly did not intend to lease or sell the prototype. Multiple copies of the prototype were necessary as a prerequisite to a sales and leasing business. (Petitioners cannot claim that their on-farm energy plant was inventory, because then it would not be depreciable or qualify for the energy credit.) Efforts to manufacture the product were undertaken, but no manufacturing was ever done due to litigation with the vendor of the manufacturing plant. The business activity of IES - (I) thus never reached the point where there was any inventory available for sale or lease. The provisions of section 1.46-3(d)(1), Income Tax Regs., provide that the property shall be considered placed in service in the earlier of the following taxable years: (i) The taxable year in which, under the taxpayer's depreciation practice, the period for depreciation with respect to such property begins; or (ii) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically *354 assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity. Thus, if property meets the conditions of subdivision (ii) of this subparagraph in a taxable year, it shall be considered placed in service in such year notwithstanding that the period for depreciation with respect to such property begins in a succeeding taxable year because, for example, under the taxpayer's depreciation practice such property is accounted for in a multiple asset account and depreciation is computed under an "averaging convention" * * * or depreciation with respect to such property is computed under the completed contract method, the unit of production method,or the retirement method. Since, under petitioners' depreciation method, depreciation was claimed for 1982, the applicable provision is section 1.46-3(d)(1)(i), Income Tax Regs., stating that the credit is allowed for the year in which the period for depreciation begins. The essential question under section 1.46-3(d)(1)(i), Income Tax Regs., is whether petitioners were "carrying on any trade or business", section 162(a), in which depreciation is allowable. No depreciation, *355 and hence no energy credit, is allowable in a year in which no active trade or business is undertaken. Petitioners point to the phrase "placed in a condition or state of readiness and availability for a specifically assigned function". Sec. 1.46-3(d)(1)(ii), Income Tax Regs. The flush language of section 1.46-3(d)(1), Income Tax Regs., makes it clear that this provision applies when an asset is available for use in an active trade or business but is not depreciable until the following year, due solely to the depreciation method which the business is using. In such a case, the energy credit may be availed of when the asset is "in a state of readiness and availability for a specifically assigned function". The same sentence provides that the property which is in a state of readiness must be, in relevant part, "in a trade or business". The prior existence of an active trade or business is necessary for the application of this subparagraph (ii). Under no circumstances are business expense deductions under section 162 available in a year before an active trade or business is carried on. Examples provided in the same regulation make it clear that it has no application when there *356 is no active trade or business: (2) In the case of property acquired by a taxpayer for use in his trade or business (or in the production of income), the following are examples of cases where property shall be considered in a condition or state of readiness and availability for a specifically assigned function -- (i) Parts are acquired and set aside during the taxable year for use as replacements for a particular machine (or machines) in order to avoid operational time loss. (ii) Operational farm equipment is acquired during the taxable year and it is not practicable to use such equipment for its specifically assigned function in the taxpayer's business of farming until the following year. (iii) Equipment is acquired for a specifically assigned function and is operational but is undergoing testing to eliminate any defects. * * * [Sec. 1.46-3(d)(2), Income Tax Regs.] All of these examples involve an ongoing trade or business in which equipment is acquired and is available for service, but, for a particular reason, its use is delayed. The investment credit is allowable for such year by virtue of section 1.46-3(d)(1)(ii), Income Tax Regs. No example concerns a situation where *357 equipment is acquired but never actually used because no active trade or business is undertaken. Business deductions are not allowable before business operations begin. The criteria for placement in service for a sales or leasing business are stringent. The product must be, in effect, "on the shelves", and the doors must be open for business. The fact that the on-farm energy plant was capable of producing energy is not controlling in this case. In a business which contemplates the sale or leasing of inventory, there must be inventory in existence for business to have begun. In a case dealing with the availability of the depreciation deduction, Piggly Wiggly Southern, Inc. v. Commissioner, 84 T.C. 739 (1985), affd. 803 F.2d 1572 (11th Cir. 1986), requirements were established for application of the "idle asset rule", i.e., that assets may be "placed in service" when not yet in actual use but in a state of readiness and available for a specifically assigned function. We identified two necessary factors: (1) The taxpayers were already engaged in the business for which the equipment had been purchased, and (2) the taxpayers had done all that *358 was in their power to place the equipment into service. A taxpayer who has not satisfied the first criterion may not claim depreciation. Wilkison v. Commissioner, T.C. Memo. 1988-386. The cases most closely in point are those in which taxpayers were denied deductions because they intended to offer a product or service, but were not yet formally open for business. For example, property held for lease to others is placed in service when it is first held out for lease. Cooper v. Commissioner, 88 T.C. 84 (1987). Taxpayers who purchased equipment for new stores, as well as existing, remodeled stores, had placed the equipment in service in the remodeled stores--which were already going concerns -- but not in those which were as yet unopened. Piggly Wiggly Southern, Inc. v. Commissioner, supra.Taxpayers who purchased a truck and trailer intended for use in a grain-hauling business were not entitled to depreciation deductions when no grain was ever hauled. "Unused property purchased for a non-existent future commercial enterprise is not 'used for trade or business.'" Simonson v. United States, 752 F.2d 341, 342 (8th Cir. 1985). *359 Petitioners state in their Motion for Reconsideration that IES - (I) was "promoting future sales of the same type of equipment". The absence of actual sales or leasing activity indicates to us that IES - (I) was a "future commercial enterprise" rather than a going concern. As stated above, section 1.46-3(d), Income Tax Regs., concerning the requirement that equipment be "placed in service" requires that for investment credit to be available, there must be an active trade or business. The Supreme Court has stated that to be engaged in a trade or business, "the taxpayer must be involved in the activity with continuity and regularity * * *. A sporadic activity * * * does not qualify." Groetzinger v. Commissioner, 480 U.S. 23, 35 (1987). We are convinced that the activity of IES - (I) was sporadic; it never rose to the level of an active trade or business. Hence it was not possible for its equipment to be placed in service. The on-farm energy plant was stored on the Caldwell farm until harvest was over and then demonstrated from time to time. The smaller components were shipped to Kiel, Wisconsin, for further testing in preparation for manufacturing. These *360 components were returned to the Caldwell farm or the Tonn farm. Their exact whereabouts is now unknown. IES - (I) was described as "dormant". Manufacturing was never undertaken. Financial records were not kept for 1982. This is a description of sporadic activity, not continuous, regular business activity. Consequently, IES - (I) was in the start-up phase of its operations. Start-up expenditures are required to be capitalized, except when the taxpayer elects, after the commencement of business, to amortize them as deferred expenses as provided in section 195(b). For the reasons stated above, we reaffirm our decision that the on-farm energy plant was never "placed in service" within the meaning of section 1.46-3(d)(1), Income Tax Regs.
We have considered various other contentions made by petitioners, but have found them unpersuasive and unnecessary to address in this opinion. Accordingly, we reaffirm our earlier opinion. An appropriate order will be issued.