Martin H. TONN, Plaintiff,

v.

UNITED STATES of America, Jack Forsberg, Donald G. Russell, Judith Screaton, and Joseph D. Wyssmann, Defendants.

Civ. No. 3–93–385.

United States District Court,
D. Minnesota,
Third Division.

Nov. 30, 1993.

Martin H. Tonn, pro se.

Tamera Fine–Trail, U.S. Dept. of Justice, for defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Martin H. Tonn commenced this action against the individual defendants Jack Forsberg, Donald G. Russell, Judith Screaton, and Joseph D. Wyssmann; Tonn alleges that the defendants, all of whom are or were employees of the Internal Revenue Service ("IRS"), committed various common law torts and violated his right to due process under the Fifth Amendment to the United States Constitution in connection with a tax dispute. Before the Court is Defendants' Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) and (6).

### Background

The following "facts" are assumed to be true for the purposes of the instant motion.

#### The Parties

Tonn is an individual who resides in the State of Minnesota.

The individual defendants were, at all times relevant to this action, employees of the IRS. Defendant Jack Forsberg was District Counsel for the IRS; defendant Donald G. Russell was an IRS Appraiser; defendant

Judith Screaton was an IRS Appeals Officer; and defendant Donald G. Russell was an IRS Revenue Agent.

#### The Origins of the Dispute

During the 1970's and early 1980's, Tonn and other individuals designed, developed, and manufactured prototype alternative energy equipment ("Equipment") designed to act as an alternative energy source to fossil fuels. Between 1981 and 1983, Tonn sold all of his interests in the Equipment to the Laurington Corporation ("Laurington"), of which he was the sole owner.

During 1981, 1982, and 1983, certain pieces of the Equipment were sold to three limited partnerships Tonn created (the "Partnerships");[1] the Partnerships were formed to demonstrate, market, and operate the Equipment, as well as manufacture similar alternative energy devices. Tonn also organized Independent Energy Systems, Inc. ("IES") to serve as the general partner of the Partnerships.[2] In 1983, Tonn, through Interstate Energy Enterprises, Inc. ("IEEI") leased, and eventually purchased, a manufacturing facility in Wisconsin for purposes of manufacturing the Equipment for sale and lease.

#### The Partnerships' Tax Dispute

In early 1985 the IRS began an audit of the Partnerships and the limited partners. When the audit was commenced, the limited partners' payments to the Partnerships were halted until the IRS investigation could be resolved. Due to the Partnerships' inability to collect funds from the partners, IEEI was forced to file for Chapter 11 bankruptcy protection in March of 1986. In March of 1987, IEEI's bankruptcy petition was dismissed on motion by the IRS for unpaid withholding taxes. After the dismissal of the bankruptcy petition, the IRS levied against and seized IEEI's assets and records; eventually, IEEI shut down.

At the end of its audit and investigation, the IRS determined that the value of the Partnerships' depreciable property had been overstated. The IRS also disallowed certain

---

1. The three partnerships were (1) Laurington Energy Properties, (2) Independent Energy Properties I, and (3) Independent Energy Properties II.

2. Tonn owned 49% of IES.

tax credits taken by the Partnerships and the partners.

The Partnerships appealed the findings of the IRS audit to the regional IRS Appeals office.[3] During a July 20, 1989 Appeals Conference between representatives of the Partnerships and Screaton, Screaton raised a new issue: the "not for profit intent" of the Partnerships. At a November 15, 1989 Appeals Conference, the Partnerships were prepared to defend the "not for profit intent" character of the enterprise; however, Screaton stated that she would not change her mind about that issue. The Partnership did not have an opportunity to present or discuss their position in detail.

On December 20, 1988 Henry A. Wall and Lavina Wall (the "Walls"), limited partners in one of the Partnerships, petitioned the United States Tax Court for a redetermination of the IRS's calculation of the permissible deductions.[4] On February 28, 1990 Forsberg informed the Walls that their case was scheduled for the April 30, 1990 docket. On March 15, 1990 Henry Wall informed Tonn[5] that the University of Minnesota Law School Clinic had reconsidered its earlier decision to assist the Walls in their Tax Court case; Wall stated that Forsberg allegedly had told the Clinic supervisor that the case was too complicated for students.

On March 23, and 28, 1990, Tonn, Wall and other persons met with Forsberg to inquire about the positions the IRS intended to take before the Tax Court in *Wall*. Although they requested that Forsberg state the reasons in writing, Forsberg did not comply with that request until April 6, 1990. Then during an April 9, 1990 meeting between Forsberg, Tonn, and certain investors, Forsberg told the investors that "Tonn was no better as a tax advisor than he was a securities advisor."

In *Wall*, Forsberg submitted a Respondents Brief in Answer. In that Brief, Forsberg (1) incorrectly relied on inapposite precedent, (2) based his arguments on the improper sections of the Internal Revenue Code, and (3) misquoted and took out of context certain court opinions. Forsberg also argued, for the first time, that certain deductions and allowances should not be available for the year 1982 because the Equipment was not "placed in service" during the taxable year.

On December 10, 1991 the Tax Court[6] ruled in favor of the IRS on the availability of tax credits for the year 1982, concluding that the equipment had not been placed "in service" in 1982. On February 25, 1992 the Walls filed a Motion for Reconsideration; on June 8, 1992 the Tax Court issued a Supplementary Memorandum Opinion[7] reaffirming its determination regarding the 1982 taxable year. However, the Tax Court now concluded that the Equipment was not "in service" in 1982 because a trade or business did not exist during the taxable year—a new and different rationale raised *sua sponte* by the Tax Court. Wall filed a Motion for Reconsideration of the Supplementary Memorandum and Opinion on July 10, 1992; on December 13, 1992, Tonn learned that the Tax Court had denied the Motion on July 14, 1992. Because the appeal period had closed by December of 1992, the Walls could not appeal the Tax Court's decision. Thereafter,

---

3. The Complaint states that Tonn first received access to IRS appraisal and Defendant Russell's reports in May of 1987. Tonn claims that those reports contained false information and relied upon a flawed methodology. Tonn addressed the purported problems during a July 20, 1989 Appeals Conference with defendant Screaton. Tonn alleges that in an October 2, 1989 internal memorandum to Screaton, Russell attempted to cover the errors in his reports by blaming the Partnerships' certified public accountant for any erroneous calculations. Tonn further alleges that in an April 21, 1989 letter to the limited partners, Screaton suggested that the limited partners take legal action against Tonn.

4. *Wall v. Commissioner of Internal Revenue,* Docket No. 32788–88S [hereinafter *Wall*].

5. Although Tonn was not a party in *Wall*, he was involved in the dispute before the Tax Court.

6. 62 T.C.M. (CCH) 1425 (T.C. Dec. 10, 1991), *on reconsideration,* 63 T.C.M. 3102 (T.C. June 8, 1992), *motion for reconsideration denied.*

7. 63 T.C.M. 3102 (T.C. June 8, 1992).

the Partnerships settled the dispute on the terms proposed by the IRS.

*Tonn's Tax Dispute*

During the investigation, certain penalties were assessed against Tonn, pursuant to 26 U.S.C. § 6703, for promoting an "abusive tax shelter" and submitting overvalued gross valuation statements. Tonn's claim for an adjustment to those penalties was disallowed on April 30, 1990. At the end of 1992, Tonn filed an action with the United States Court of Claims regarding those penalties. On the United States' Motion to dismiss the appeal on the ground that the Court of Claims lacked jurisdiction, Tonn's action was dismissed for want of jurisdiction.

Thereafter, Tonn asked United States Senator Paul Wellstone (MN) to review certain allegedly conflicting IRS documents. Following an inquiry by Senator Wellstone's office, the IRS reconsidered its position and met with Tonn on December 3, 1992 to discuss the penalties. On March 29, 1993 the IRS informed Tonn that it was abating all section 6703 penalties against him for taxable years 1982 and 1983.

Tonn filed this action on June 14, 1993. The Complaint alleges four causes of action: Count I—Fraud;[8] Count II—Misrepresentation of Fact;[9] Count III—Defamation;[10] and Count IV—Deprivation of Fifth Amendment Constitutional Rights of Due Process.[11] On September 20, 1993, defendant United States of America filed a Motion, pursuant to 28 U.S.C. §§ 2679(b) and (d)(1), for an order substituting it as the party defendant to

8. In Count I, Tonn claims that (1) in June of 1988, Wyssmann made fraudulent representations to certain partners and investors that Tonn had misappropriated funds of the Partnerships' for personal use; (2) in 1985, Wyssmann made representations to partners and investors that credits relating to the Equipment, which the partners had taken as deductions on their income tax, would not be allowed; (3) from 1986 through 1990 (a) Russell, in his original Appraisal, (b) Screaton, by refusing to acknowledge certain statements, and (c) Forsberg, by his submission of Respondent's Expert Witness Report, fraudulently misrepresented their comparable example of Fair Market Valuation comparison, understated at a ratio of 20:1; (4) Russell fraudulently attempted to deceive Tonn by placing blame for his own errors on the Partnerships' accountant; and (5) Forsberg's Respondent's Brief in Answer, submitted to the Tax Court in *Wall* fraudulently took out of context and misrepresented certain judicial opinions.

9. In Count II, Tonn alleges that (1) Russell attempted to hide his erroneous tax valuation methodology by blaming his shoddy work on the Partnerships' accountant; (2) Screaton stated that even if there were problems with the IRS' audit/appraisal, alternative issues would be raised at trial; (3) Russell improperly calculated the interest rate of certain investments held by the Partnerships; (4) Russell and another IRS Appraiser misrepresented their erroneous appraisal of certain equipment as fact, which Screaton relied upon and which Forsberg put before the Tax Court in his "Respondent's Expert Witness Report."

10. In Count III, Tonn alleges that (1) during his 1985 audit investigation, Wyssmann made false statements to partners and investors that Tonn was using partnership funds for his own use; (2) during an April 9, 1990 meeting with Forsberg

concerning the trial in *Wall*, Forsberg (a) told Tonn, in the presence of other investors, (i) "you don't know what you are talking about," and (ii) "you are not qualified to speak on these issues"; and (b) told the other investors that they should get someone else to advise them because Tonn didn't know any more about tax law than he did about securities law; and (3) in an April 21, 1989 letter, Screaton suggested that the partners commence legal action against Tonn.

11. In Count IV, Tonn alleges that the following acts have deprived him of due process:

(a) false and erroneous statements made to investors asserting fraudulent actions by Tonn with respect to allocation of funds within the Partnerships;

(b) failing to provide a timely notice to Tonn of false and erroneous allegations being made to the investors by the defendants, depriving Tonn of the right to protect and defend himself, his property, and his business;

(c) failing to provide a neutral decision-maker to rule on the veracity of the allegations before these actions were taken;

(d) denying Tonn's request for an opportunity to make a detailed oral presentation to the defendants during either the fact-finding portion of the investigation or the Appeals Conferences;

(e) denying Tonn an opportunity, during the audit, appeals process, and/or litigation process, to present evidence regarding the issues or witnesses to the investigative personnel or decision making agents regarding the allegations made against him; and

(f) failing to inform Tonn of the allegations being made against him, thereby denying him the opportunity to be represented by an attorney in defending false IRS allegations prior to the IRS levying and seizing his property.

Counts I, II, and III.[12] Although Tonn opposed that Motion, the court[13] ordered the United States substituted as the defendant to Counts I–III;[14] however, the court held that the individual defendants would remain in the action as defendants to Tonn's due process claim in Count IV. This Motion followed.[15]

### Discussion

#### I. Counts I, II, and III

As discussed above, Counts I, II, and III of the Complaint allege common law tort claims; however, in his responsive memorandum, (*see* Mem. Opp'n Mot. to Dismiss, at 1–2), and at the hearing on the instant motion, Tonn contended that his Complaint asserts only a due process claim. Thus, it is not clear whether Tonn has alleged four separate causes of action, or only one (in which case the claims in Counts I through III merely support his due process claim in Count IV).

Assuming that Tonn has alleged independent causes of action for fraud, misrepresentation, and defamation, those claims are not within this Court's subject matter jurisdiction. As noted above, Tonn's claims against the United States, although originally brought against individual employees of the IRS, are, as a result of the order of substitution,[16] now deemed to have arisen under the FTCA. As such, Tonn's claims are subject to all of the limitations provided in the FTCA. *See* 28 U.S.C. § 2679(d)(4). One of those limitations requires that a plaintiff exhaust his administrative remedies by first presenting his claim[17] to the appropriate federal agency.[18] 28 U.S.C. § 2675(a). This presentment requirement is jurisdictional; it must be satisfied before this Court may exercise its jurisdiction over the claim. *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir.1993) (citing *Melo v. United States*, 505 F.2d 1026, 1028–29 (8th Cir.1974)).

A review of the record in this case demonstrates that Tonn has failed to satisfy the FTCA's administrative claim requirement. There is no indication that Tonn has submitted a satisfactory claim to the IRS or any other agency in connection with the tort claims alleged in Counts I through III. Accordingly, if Counts I–III allege separate claims, this Court is without subject matter jurisdiction over them and they must be dismissed without prejudice.[19]

**12.** On September 27, 1993 the United States filed an Amended Motion for Substitution (Doc. No. 13).

**13.** *See* October 15, 1993 Order (Boline, M.J.) (Doc. No. 21).

**14.** The Federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. § 2679(d)(1) provides that where an individual federal employee is a made a party defendant, the United States should be substituted as a defendant in place of that employee where the Attorney General certifies that the employee was acting within the scope of that employee's employment at the time that the incident giving rise to the claim occurred. Upon substitution, the action or proceeding is deemed to be one under the Federal Tort Claims Act ("FTCA"). *Id.* § 1346(b).

**15.** The United States filed a Motion to Dismiss on September 21, 1993 and an Amended Motion to Dismiss on September 30, 1993.

**16.** At page 6 of his responsive memorandum, Tonn takes issue with the propriety of the substitution as well as the certification that the individual defendants were acting within the scope of their employment during the incidents in question. To the extent that Tonn is contesting the propriety of the substitution order, his opposition is not supported by existing law or the record in this case.

**17.** A qualifying claim must include written notification of an incident and a claim for money damages, in a sum certain, for injury alleged to have occurred by reason of the incident. 28 C.F.R. § 14.2(a); *see Pan Tech Mgmt. v. HUD*, 788 F.Supp. 152, 154 (E.D.N.Y.1992).

**18.** 28 U.S.C. § 2675(a) provides in pertinent part:

[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

**19.** The United States has made several arguments in support of dismissal on the merits. The Court has not assessed the reasonableness, if any, of those arguments.

## II.  Count IV

■ Count IV of the Complaint is a *Bivens*[20] action alleging that the individual defendants violated Tonn's due process rights under the Fifth Amendment. The Government contends that Tonn's *Bivens* claim must be dismissed because (1) it fails to meet the heightened pleading requirement for a *Bivens* claim; (2) Congress has provided him with an alternative, exclusive remedy; and (3) the individual defendants are immune from liability.

### A.  The Standard of Decision

■ When passing on a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), the court accepts as true the material facts alleged in the Complaint and considers the allegations therein in the light most favorable to the non-movant. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court may dismiss a complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[21] *Hishon v. King & Spaulding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### B.  Sufficiency of the Allegations in Count IV

■ To satisfy applicable pleading requirements, a plaintiff alleging that his civil rights were violated must "at least set forth minimal facts, not subjective characterizations, as to who did what to whom and why." *Kaylor v. Fields,* 661 F.2d 1177, 1183 (8th Cir.1981); *see also Dewey v. University of New Hampshire,* 694 F.2d 1, 3 (1st Cir.1982) (citing, *inter alia, Anderson v. Sixth Judicial District Court,* 521 F.2d 420 (8th Cir.1975)), *cert. denied,* 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983). However, a complaint need not state each and every fact relevant to the claimed violation in order to satisfactorily plead a constitutional violation.

When measured against the standard set forth above, Tonn's Complaint satisfies all relevant pleading requirements. Contrary to the Government's view, Tonn's Complaint is not a "rambling, circuitous, largely incoherent diatribe," (*see* Mem.Supp.Mot. Dismiss, at 2); rather, it identifies specific acts which were allegedly taken by each named defendant and which allegedly violated Tonn's rights to due process. In other words, the Complaint is more than a series of conclusory allegations devoid of any factual basis.[22]

### C.  Extending Bivens Action to Violations by IRS Employees

The United States also seeks dismissal on a more fundamental ground: *Bivens* actions against IRS employees are not appropriate. The Government contends that the Code provides taxpayers with meaningful safeguards from or remedies for wrongful conduct of IRS agents. As a result, it continues, even though Congress has not specifically provided taxpayers with a statutory right to recover money damages for constitutional violations by IRS employees, this Court should not extend a *Bivens* claim to Tonn. The Court agrees.

In *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988), the Supreme Court, in reviewing the propriety of a

---

**20.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens,* the Supreme Court held that damages may be awarded where federal officers knowingly violate an individual's Fourth Amendment rights, if (1) the individual has no other remedy, and (2) there is no explicit Congressional declaration that persons injured by a federal officer's violation of the constitution may not recover money damages. In *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), the Supreme Court recognized a *Bivens* action arising under the Due Process Clause of the Fifth Amendment.

**21.** In this case, certain of the parties have submitted materials outside of the pleadings and attachments thereto. Under Rule 12(b)(6), where matters outside the pleadings are not excluded by a court when passing on a motion to dismiss, the motion is deemed to be one for summary judgment under Rule 56. The Court has excluded all submissions which would convert this motion to one for summary judgment.

**22.** Of course, that the Complaint satisfies Rule 8(a) does not mean that it will withstand the Government's remaining arguments in favor of dismissal.

*Bivens* action for constitutional violations by social security system employees, counseled that because "special factors counsel[ ] hesitation," there are circumstances under which a court-created damages remedy may not be appropriate, even where there is no statutory relief for a constitutional violation. *Id.* at 421, 108 S.Ct. at 2467. The Court reasoned that

> "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to be an appropriate judicial deference to indications that congressional inaction has not been inadvertent. When the design of a governmental program suggests that Congress has provided what it considers to be adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423, 108 S.Ct. at 2468.[23] Applying this reasoning, the *Schweiker* Court proceeded to hold that, even though Congress had failed to provide a remedy in damages for constitutional violations by social security employees, a *Bivens* action was inappropriate since (1) the social security system contains elaborate mechanisms for the resolution of claims, and (2) Congress had given frequent attention to problems arising under the system. *Id.* at 425, 108 S.Ct. at 2468–69 (discussing *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (*Bivens* action not appropriate in civil service system), and *Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (*Bivens* action not appropriate in military justice system)).

**23.** In a decision issued six months prior to *Schweiker,* the court in *Felak v. United States,* 677 F.Supp. 606 (D.Minn.1988), set forth three factors which make courts reluctant to expand the availability of *Bivens* actions: (1) the lack of an underlying constitutional claim; (2) the existence of explicit statutory remedies; and (3) a risk that court-created remedies would interfere with the effective functioning of government. *Id.* at 607 (citations omitted).

**24.** In addition, certain of the acts allegedly done in violation of Tonn's Fifth Amendment rights are similar to the alleged violations at issue in *Schweiker.* *Cf.* Complaint, ¶¶ 45(c)–(e) *and* 487 U.S. at 420 n. 2, 108 S.Ct. at 2466 n. 2.

The Court agrees with decisions (both pre- and post-dating *Schweiker* ) holding that because the remedial scheme of the Code provides taxpayers with sufficient alternative means of challenging and correcting inappropriate conduct by IRS employees, it would be improper to recognize a *Bivens* action in situations where, as here, the alleged violations of the Fifth Amendment occurred in connection with IRS activities (whether they concern the determination or collection of taxes). *See Wages v. I.R.S.,* 915 F.2d 1230, 1235 (9th Cir.1990) (post-*Schweiker;* plaintiff alleged that "fraudulent" acts of individual defendants violated Fifth Amendment due process rights), *cert. denied,* 498 U.S. 1096, 111 S.Ct. 986, 112 L.Ed.2d 1071 (1991); *National Commodity & Barter Ass'n v. Gibbs,* 886 F.2d 1240, 1247–48 (10th Cir.1989) (post-*Schweiker* ); *Hefti v. McGrath,* 784 F.Supp. 1426, 1431 (W.D.Mo.1992) (post-*Schweiker* ), amended (Mar. 31, 1992); *Felak v. United States,* 677 F.Supp. 606, 607–08 (D.Minn. 1988) (pre-*Schweiker* ); *see also McMillen v. United States Dept. of Treasury,* 960 F.2d 187, 190 (1st Cir.1991) (dicta); *Cameron v. Commissioner,* 773 F.2d 126, 129 (7th Cir. 1985).[24] The Code provides taxpayers with the ability to fully litigate any liability or penalty determined by the IRS.[25] This statutory scheme adequately protects a taxpayer's right to due process. *Stonecipher v. Bray,* 653 F.2d 398, 401 (9th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *see Gonsalves v. IRS,* 986 F.2d 1407 (table), *text reported at* 1993 WL 48808 (1st Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 151, 126 L.Ed.2d 112 (1993). In this case, Tonn and the partners of the

**25.** The Code requires that the IRS provide a taxpayer with (1) notice before it takes his property, and (2) a choice whether to be heard before or after the deprivation. 26 U.S.C. § 6213(a). Once the IRS determines that a taxpayer owes money, it must issue a notice of the deficiency, then wait 90 days before attempting to collect the taxes due. *Id.* § 6213(a). If the taxpayer wants a pre-deprivation hearing, he can, during those 90 days, file a petition with the Tax Court asking it to redetermine the deficiency; any collection efforts are stayed during the pendency of the petition. *Id.* Alternatively, the taxpayer can pay the deficiency, i.e., suffer the deprivation, and then seek a refund in a post-deprivation action in federal district court. *Id.* § 7422.

Partnerships filed administrative appeals of various assessments and penalties, certain of the partners unsuccessfully sought to have the Tax Court redetermine the IRS's disallowance of their tax credits, and Tonn sought and was able to have the IRS abate his section 6700 penalties (albeit with the help a United States Senator).

In addition, the Code provides taxpayers with remedies, judicial and otherwise, for correcting and redressing wrongful acts taken by IRS employees in connection with any collection activities. *See e.g.,* 26 U.S.C. § 7433 (creating civil action for wrongs committed after December 31, 1988). Although these provisions do not provide taxpayers with an all-encompassing remedy for wrongful acts of IRS personnel, the rights established under the Code illustrate that it provides

> all sorts of rights against the overzealous officialdom, including, most fundamentally, the right to sue the government for a refund if forced to overpay taxes, and it would make the collection of taxes chaotic if a taxpayer could bypass the remedies provided by Congress simply by bringing a damage action against [IRS employees].

*Cameron,* 773 F.2d at 129; *see Schweiker,* 487 U.S. at 423, 108 S.Ct. at 2468. With such a panoply of rights already available, Congress, and not this Court, should be the body charged with creating additional liabilities for IRS employees who violate a taxpayer's constitutional rights.[26] For all these reasons, therefore, it would be inappropriate to recognize a *Bivens* remedy with respect to Tonn's claim that the individual defendants violated his Fifth Amendment due process rights.

In summary, the substance of the Complaint reveals that Tonn believes the defendants acted improperly during the course of the IRS's investigation into the Partnerships and related entities. If the allegations contained in the Complaint are true (as they are assumed to be for purposes of this motion), the individual defendants failed to afford Tonn the respect he deserved as a taxpayer and representative of the Partnerships. That being said, however, improper treatment by IRS employees is not, in light of the Code's detailed and comprehensive remedial scheme, a sufficient basis upon which to extend a *Bivens* cause of action to Tonn's due process claims in Count IV. Accordingly, Tonn's claims against the individual defendants in Count IV of the Complaint will be dismissed.

### D. Qualified Immunity

■ Even if it was appropriate to recognize a *Bivens* action in this case, all of the individual defendants would be immune from liability for any violations of Tonn's procedural or substantive due process rights under the doctrine of qualified immunity. A public official is entitled to immunity when his or her conduct is objectively reasonable as measured by reference to law clearly established at the time of the incident in question. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Initially, a plaintiff must show that a law is "clearly established," i.e., a plaintiff must make a particularized showing that a "reasonable official" would understand that what he is doing violated one of plaintiff's constitutional rights. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). A government official cannot be held liable for a violation of "extremely abstract rights." *Id.* at 639, 107 S.Ct. at 3039. The cases cited in the Court's discussion of Tonn's *Bivens* claim demonstrate, at the very least, that the actions alleged in Count IV, *see supra,* note 11, did not violate a right to due process (procedural or substantive) that is *clearly established. See Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir.1992); *Yalkut v. Gemigna-*

---

**26.** Moreover, the existence of a *Bivens* remedy against employees of the IRS would interfere with the functioning of government. *Felak,* 677 F.Supp. at 608. "To open up an entirely new avenue of relief resulting in the personal liability of [IRS] employees would serve to hamper the ability of such employees to perform a function that is a difficult one and one that is vital to our nation." *Baddour, Inc. v. United States,* 802 F.2d 801, 806 (5th Cir.1986), *quoted in, Felak,* 677 F.Supp. at 608.

*ni,* 873 F.2d 31, 35–36 (2d Cir.1989); *see also Wages,* 915 F.2d at 1235; *Gonsalves v. I.R.S.,* 791 F.Supp. 19, 23 (D.Me.1992), *aff'd,* 986 F.2d 1407 (1st Cir.1993) (table) (same). Accordingly, Tonn would be precluded from asserting his claims in Count IV against any of the individual defendants.[27]

### Conclusion

Based upon the foregoing, and the records, files, and proceedings herein, including the briefs and arguments of counsel, **IT IS ORDERED** that the Defendants' Motion to Dismiss (Doc. No. 11) is **GRANTED.** Plaintiff's claims against the United States in Counts I, II, and III are **DISMISSED WITHOUT PREJUDICE** and plaintiffs' claims against defendants Forsberg, Russell, Screaton and Wyssmann in Count IV are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

**27.** Viewing Tonn's allegations against defendant Forsberg under the proper Rule 12(b)(6) standard, Forsberg would also be entitled to absolute prosecutorial immunity for any actions relating to the litigation in *Wall. Butz v. Economou,* 438 U.S. 478; 516–17, 98 S.Ct. 2894, 2916, 57 L.Ed.2d 895 (1978); *Fry v. Melaragno,* 939 F.2d 832, 836–37 (discussing *Butz* ).