T.C. Memo. 2001-123

UNITED STATES TAX COURT

MARTIN H. TONN AND LORRAINE A. TONN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11076-99.                    Filed May 24, 2001.

Martin H. Tonn and Lorraine A. Tonn, pro sese.

<u>Eric W. Johnson</u>, for respondent.


MEMORANDUM OPINION

RUWE, <u>Judge</u>:  This matter is before the Court on
respondent's motion for partial summary judgment filed pursuant
to Rule 121.[1]  The issues presented are:  (1) Whether the amounts

_____

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

and characterizations of gross income determined in the notices of deficiency are correct; and (2) whether petitioners incurred a loss in 1987 which they may use to offset their gross income for 1995, 1996, and 1997.

Background

Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

Mr. Tonn

| | | Additions to tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1995 | $592 | $148.00 | $32.10 |
| 1996 | 1,165 | 291.25 | 62.02 |
| 1997 | 1,279 | 319.75 | 68.45 |

Mrs. Tonn

| | | Additions to tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654 |
| 1996 | $18,801 | $4,700.25 | $1,000.68 |
| 1997 | 15,539 | 3,884.75 | 831.34 |

In the notices of deficiency, respondent determined the following amounts and characterizations of petitioners' gross income:

Mr. Tonn

| Year | Interest Income | Self-Employment Income | Rental Income |
| --- | --- | --- | --- |
| 1995 | $153 | $4,187 | -- |
| 1996 | 246 | 7,169 | -- |
| 1997 | 360 | 2,820 | $9,000 |

Mrs. Tonn

| Year | Self-Employment Income |
| --- | --- |
| 1996 | $57,429 |
| 1997 | 49,614 |

On March 26, 2001, respondent filed a request for admissions, containing 22 admissions, setting forth the same amounts and characterizations of gross income determined in the notices of deficiency sent to petitioners. Petitioners filed the following answer to respondent's request for admissions:

> In response to your request for admission dated March 20, 2001 we wish to state: We had a major change of office personnel in June 2000. <u>Much of the information you have requested has been either lost or misplaced. We will have to assume that the items #1-22 are correct as listed in your request</u>.

In their amended petition, petitioners contend that on March 27, 1987, respondent's agents conducted a seizure at Interstate Energy Enterprises, Inc.'s (IEEI) manufacturing facility which was "wrongful, illegal and unconstitutional" and caused the loss of petitioners' property and business. Petitioners' position in their amended petition is that the damages caused by the seizure activities should be taken into consideration when calculating their personal income taxes for the years since 1987.[2] The amount of the loss that petitioners claim they are entitled to is based on the value of Mr. Tonn's labor.

Over a period of years prior to 1981, Mr. Tonn developed an

___

[2]On July 26, 2000, this Court entered an order dismissing for lack of jurisdiction all years subsequent to 1987 with the exception of petitioners' taxable years 1996 and 1997 and Mr. Tonn's taxable year 1995.

"on-farm energy plant".[3]  In 1981, Mr. Tonn sold the on-farm energy plant to Laurington Corp. (Laurington), his wholly owned corporation.  Under the terms of the sale, payments were to be made in installments.  Between 1981 and 1983, Laurington sold the on-farm energy plant to three partnerships.  Payments were also to be made in installments.  The three partnerships were:  (1) Laurington Energy Properties; (2) Independent Energy Systems I; and (3) Independent Energy Systems II (collectively, the Alternative Energy entities).  Before 1987, the Alternative Energy entities entered into a royalty agreement with IEEI, whereby IEEI agreed to manufacture and sell on-farm energy plants and pay the Alternative Energy entities royalties on the sales. IEEI owned or leased property in Kiel, Wisconsin, where it planned to manufacture on-farm energy equipment.

Sometime before March 27, 1987, respondent filed liens against the property of IEEI.  On March 27, 1987, respondent's agents entered the property of the IEEI plant in Kiel, Wisconsin, and posted a notice of seizure.  On the same day, respondent's agents went to Citizens State Bank in Kiel, Wisconsin, and agreed to discharge the liens against the IEEI property in exchange for the payment of $22,500.  Citizens State Bank was a creditor of IEEI and also had liens against the IEEI property.  The payment

---

[3]The "on-farm energy plant" was an ethanol-based power system for farms.

of $22,500 from Citizens State Bank to respondent was credited against IEEI's outstanding tax liabilities.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  See Northern Ind. Pub. Serv. Co. v. Commissioner, 101 T.C. 294, 295 (1993); Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974).  Rule 121(a) provides that either party may move for a summary judgment upon all or any part of the legal issues in controversy.  Full or partial summary judgment is appropriate where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law.  See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  Respondent, as the moving party, bears the burden of proving that no genuine issue exists as to any material fact and that he is entitled to judgment as a matter of law.  See Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

Once a motion for summary judgment is made and supported, the nonmoving party must do more than merely allege or deny facts in its pleadings; it must "set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, then a decision, if appropriate, may be entered against such party."  Rule 121(d); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 n.3 (1986); Sundstrand Corp. v.

Commissioner, supra at 520.  In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party.  See Bond v. Commissioner, supra at 36; Naftel v. Commissioner, supra at 529.

Petitioners do not dispute the authenticity of any of the exhibits attached to respondent's motion for partial summary judgment, nor have they claimed that they did not make the representations contained therein.  However, petitioners argue that some of the factual allegations made by respondent are in dispute.  After reviewing the materials filed by both parties, we find that there is no genuine issue as to any of the material facts that we have set forth in the background section of this opinion.  A significant undisputed factual allegation is that the amount of the loss that petitioners claim they are entitled to is based on the value of Mr. Tonn's labor.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The first issue is whether the amounts and characterizations of gross income determined in the notices of deficiency are correct.  Respondent filed a request for admissions setting forth

the same amounts and characterizations of gross income determined in the notices of deficiency sent to petitioners. In their answer, petitioners claim that they do not have the necessary records to verify the request for admissions and state that they assume the requested admissions are accurate. We deem petitioners' response a concession as to the amounts and characterizations of gross income determined in the notices of deficiency for the years in issue. See Rule 90(c).

The remaining issue for purposes of respondent's motion is whether petitioners incurred a loss in 1987 which they may use to offset their gross income for the years in issue. Petitioners argue that they may offset their gross income with a carryforward loss that they claim was caused by respondent's illegal and unconstitutional seizure activities against assets of IEEI, the Alternative Energy entities, and Mr. Tonn in March of 1987.[4]

---

[4]Petitioners present lengthy arguments in support of their contention that respondent's agents engaged in illegal and unconstitutional collection activities. We generally do not address such arguments. See, e.g., Kerr v. Commissioner, 5 B.T.A. 1073, 1095 (1927). We note that petitioners have pursued their claims that respondent's agents engaged in illegal and unconstitutional collection activities in District Court, but those claims have been unsuccessful. See, e.g., Tonn v. United States, 210 F.3d 379 (8th Cir. 2000); Tonn v. United States, 78 AFTR 2d 96-5631 (D. Minn. 1996), affd. without published opinion 108 F.3d 1382 (8th Cir. 1997); Tonn v. United States, 847 F. Supp. 711 (D. Minn. 1993), affd. sub nom. Tonn v. Forsberg, 27 F.3d 1356 (8th Cir. 1994). Petitioners also contend that they did not receive notice of the alleged seizure in March of 1987, and, thus, the property seized must be returned. This argument does not bear on the issue of whether petitioners are entitled to
(continued...)

Respondent alleges that petitioners are claiming a loss of $920,000, which is the value placed by petitioners on the labor contributed by Mr. Tonn over the years prior to 1987 for developing the on-farm energy systems. In response to this specific allegation, petitioners state that "the value was not placed by Petitioners. The value was determined by Russell Associates Appraisal of Alternative Energy equipment".[5] In an exhibit attached to respondent's motion, Mr. Tonn states that he "suffered a loss of approximately $920,000" as a result of the March 1987 collection activities. Respondent also presented a document obtained through informal discovery in which respondent posed the following question: "Please state the total amount of loss you suffered from the March 27, 1987 seizure". Petitioners responded that a "Loss of alternative energy equipment and appraisal was left with Eric Johnson District Council at 1-5-01

---

[4](...continued)
offset their gross income for the years in issue with a claimed loss; thus, we find it unnecessary to address it.

[5]Respondent posed the following question to petitioners during informal discovery:

> 3) Please provide a calculation of your basis in the on-farm energy plant, i.e., your costs and efforts involved in creating the on-farm energy plant, prior to the sale to Laurington Corporation and any substantiating documentation.

In response, petitioners stated that "Russell Associates Appraisal was left with Eric Johnson of the IRS District Council's Office during the January 5, 2001 meeting."

meeting. $920,000.00 <u>Alternative Energy Property only</u>."  The response further states that "Loss of IEEI property not part of this claim."  The appraisal by Russell Associates was performed to estimate the value of the prototype farm energy system equipment and technology which was sold to the Alternative Energy entities.[6]  The appraisal values Mr. Tonn's labor for the years 1969 through 1983 at $920,250.

Petitioners admit that they were not the taxpayers in the alleged seizure activities in March of 1987 and that they are not seeking damages for any property owned by IEEI.[7]  Petitioners argue that the value of Mr. Tonn's labor was in the hard assets of the equipment of the Alternative Energy entities. Additionally, petitioners claim that the alleged seizure activities "wrongfully confiscated Tonn's labor contribution in inventory and equipment" and these activities "destroyed Tonn's hope for future income from the sales of the seized property and equipment."  Petitioners do not dispute respondent's factual allegations that (1) petitioners are claiming a loss of $920,000,

---

[6]The appraisal valued the equipment components at $175,500 and the research and development investment at $1,258,926.  After adjusting for other factors, the appraisal concluded that the value of the prototype equipment was $1,200,000.  The appraisal contains a table valuing the labor put into the equipment and then allocating that labor to different components of the equipment.

[7]Thus, petitioners could not have incurred a loss with respect to any property owned by IEEI.  See, e.g., <u>Rink v. Commissioner</u>, 51 T.C. 746, 752-753 (1969).

and (2) the $920,000 is properly characterized as the value of Mr. Tonn's labor, as determined by the appraisal performed by Russell Associates.

In viewing the factual materials and the inferences drawn from them in the light most favorable to petitioners, we find that their pleadings raise claims for a deduction or loss under sections 162, 165, and 166. It appears that petitioners are arguing that they are entitled to a loss for either (1) the value of Mr. Tonn's labor which petitioners will not recover because of the alleged collection activities of respondent, or (2) the amount of the payments that Laurington failed to make to petitioners under the installment sale for the on-farm energy equipment.[8] In either situation, petitioners are not entitled to a deduction or loss as a matter of law.

The value of labor performed by a taxpayer does not constitute an amount "paid or incurred", and, for that reason, a cash basis taxpayer is not entitled to deduct the value of his or her own labor as a business expense under section 162(a). Maniscalco v. Commissioner, 632 F.2d 6, 7-8 (6th Cir. 1980),

---

[8]An exhibit signed by Mr. Tonn that sets forth a summary of his claim is attached to respondent's motion for partial summary judgment. In the document, Mr. Tonn claims that as a result of the seizure activities in March 1987, Laurington was unable to make installment payments to Mr. Tonn. Mr. Tonn further states that the $920,000 loss flowed from the March 1987 seizure activities and included "receivables from the Laurington Corporation relating to the energy equipment research, inventory, equipment, manufactured goods, and vehicles."

affg. T.C. Memo. 1978-274; <u>Grant v. Commissioner</u>, 84 T.C. 809, 820 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986); <u>Rink v. Commissioner</u>, 51 T.C. 746, 753 (1969).  Thus, a taxpayer is not entitled to a deduction for the imputed value of services which he has not been required to report as income. See <u>Maniscalco v. Commissioner</u>, <u>supra</u> at 7-8; <u>Grant v. Commissioner</u>, <u>supra</u> at 820; <u>Rink v. Commissioner</u>, <u>supra</u> at 753. Petitioners make no allegation that they reported the $920,000 of claimed losses on any of their Federal income tax returns, and they represented that they were cash basis taxpayers for the years in issue.[9]

Section 165 provides, in general, for the deductibility of losses sustained by the taxpayer.  Section 166 provides, in general, for the deductibility of debt which becomes worthless during the taxable year.  Under both provisions, the amount of the deduction is determined by reference to the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of the property.  See secs. 165(b) and 166(b).  The deduction of a bad debt or a loss from gross income

---

[9]In an exhibit attached to respondent's motion for partial summary judgment, respondent asked petitioners whether they reported the sale of the on-farm energy plant to Laurington Corp. on any of their Federal income tax returns.  Petitioners replied that "I don't believe it was because we were on a cash basis and no cash was received."  Petitioners have not disputed any of the exhibits attached to respondent's motion and have referenced the exhibits in their arguments opposing respondent's motion for partial summary judgment.

is limited to situations where the taxpayer has a basis in the item he is claiming a deduction or a loss on. See Oates v. Commissioner, 316 F.2d 56, 57-58 (8th Cir. 1963), affg. T.C. Memo. 1962-77; Perry v. Commissioner, 92 T.C. 470, 477-478 (1989), affd. without published opinion 912 F.2d 1466 (5th Cir. 1990); Swenson v. Commissioner, 43 T.C. 897, 898 (1965); Towers v. Commissioner, 24 T.C. 199, 239 (1955), affd. 247 F.2d 233 (2d Cir. 1957); O'Meara v. Commissioner, 8 T.C. 622, 632-633 (1947). It is well established that a cash basis taxpayer is not entitled to a deduction under section 165 for the loss of potential, unreported income. See Hort v. Commissioner, 313 U.S. 28, 33 (1941); Escofil v. Commissioner, 464 F.2d 358, 359 (3d Cir. 1972), affg. T.C. Memo. 1971-131; Hutcheson v. Commissioner, 17 T.C. 14, 19 (1951). Additionally, a cash basis taxpayer is not entitled to a deduction under section 166 for an income item when the item has never been reported in income. See Gertz v. Commissioner, 64 T.C. 598, 600 (1975); Seymour v. Commissioner, 14 T.C. 1111, 1117 (1950); Garrison v. Commissioner, T.C. Memo. 1994-200, affd. without published opinion 67 F.3d 299 (6th Cir. 1995). "A short form for stating the rule might thus be that the process of establishing a basis for an income item consists, in effect, of reporting it in the taxpayer's gross income for tax purposes." O'Meara v. Commissioner, supra at 633.

Petitioners do not dispute respondent's specific allegation

that the amount of the deduction or loss they are claiming is based on the value of Mr. Tonn's labor. Courts have consistently and uniformly held that a taxpayer has no basis in his labor. See Carter v. Commissioner, 784 F.2d 1006, 1009 (9th Cir. 1986); Funk v. Commissioner, 687 F.2d 264, 265 (8th Cir. 1982), affg. per curiam T.C. Memo. 1981-506; Abrams v. Commissioner, 82 T.C. 403, 407 (1984); Rowlee v. Commissioner, 80 T.C. 1111, 1119-1122 (1983).

Petitioners are claiming a loss of $920,000. Petitioners do not dispute that this amount was determined in the appraisal by Russell Associates, in which the amount is attributed to the value of Mr. Tonn's labor. Petitioners have not alleged that they reported in their gross income the amount due from Laurington under the installment sale of the on-farm energy equipment or any amount attributable to Mr. Tonn's labor contribution to the on-farm energy equipment. Petitioners have represented that they were cash method taxpayers for the years in issue. Accordingly, the undisputed facts establish, as a matter of law, that petitioners are not entitled to a deduction or a loss for the years in issue.

An appropriate order will be issued granting respondent's motion for partial summary judgment.